### 9807

### ROBINSON v. SOUTHERN COTTON OIL CO.

#### (93 S. E. 395.)

1. TRIAL—JURY QUESTION—CONFLICTING EVIDENCE.—Where the evidence on an issue is conflicting, the question is for the jury.

2. PRINCIPAL AND AGENT—APPARENT SCOPE OF AGENT'S AUTHORITY.—Where the general manager of a cotton oil company which operated a gin, whose authority was apparently unlimited in soliciting ginning of cotton, being disirous of obtaining cotton seed, offered to care for plaintiff's cotton after ginning until disposition should be made, the general manager's authority was sufficient to justify an inference that he had authority to make the contract.

3. BAILMENT — CARE — ORDINARY CARE.—Where a cotton oil company, which did a ginning business in order to obtain cotton seed, agreed to care for plaintiff's cotton until he should dispose of it, if he would have it ginned in their establishment, such agreement required the company to exercise ordinary care for the safety of the cotton.

4. BAILMENT — BAILEES — PRESUMPTION.—Where a cotton oil company, which did a ginning business offered to care for bailed cotton left

in its yards, there was an implied agreement, in the absence of notice that after baling the cotton would be left at the owner's risk, to take reasonable precautions to protect it from fire.

5. PRINCIPAL AND AGENT—AUTHORITY—EVIDENCE.—The mere fact that there were apparently, no limitations on the authority of the general manager of a cotton oil company which did a ginning business, and who offered to care for the cotton of persons who had it ginned at the company's establishment, does not imply an authority to warrant the safety of the cotton so left with the company.

6. BAILMENT—ACTIONS—EVIDENCE—SUFFICIENCY.—In an action against a cotton oil company for the destruction of plaintiff's cotton by fire, it having been left in the company's yards under an alleged agreement to care for it, the question of the company's negligence *held,* under the evidence, for the jury.

Before MOORE, J., Greenville, December, 1916. Reversed.

Action by Henry A. Robinson against the Southern Cotton Oil Company. From a judgment for defendant, plaintiff appeals.

*Messrs. McCullough, Martin & Blythe,* for appellant, cite: *As to burden of proof on bailee:* 76 S. C. 245, 247, 248; 98 S. C. 476; 99 S. C. 24; 84 S. C. 119; 91 S. C. 272. *As to evidence of negligence:* 76 S. C. 245; 143 S. C. 683; 77 Pac. 664; 24 L. R. A. (N. S.) 1117, 1120; 43 L. R. A. (N. S.) 1121-1175; 75 S. E. 140; 37 S. E. 392; 79 S. E. 589; 76 S. C. 14. *Evidence of agency:* 31 Cyc. 1340, 1335, 1331, 1332, 1333, 1337, 1236, 1237; 74 S. C. 221; 1 Peters 290; 10 So. 307; 78 Ala. 372; Mechem Agency, secs. 283-287; *Id.,* secs. 83, 84.

*Messrs. Cothran, Dean & Cothran,* for respondent, cite: *As to burden of proof:* 240 U. S. 632; 193 Ill. App. 14; 38 Pa. Super. Ct. 408; 47 So. 662; 12 So. 555; Schouler Bailments, 26; 62 Cal. 164; 92 Am. Dec. 189; Jones Pledges, secs. 411, 413; 7 Am. Rep. 327; 28 L. R. A. 716; 82 Am. St. Rep. 293; 66 Am. St. Rep. 375; 102 N. W. 826; 138 S.

W. 699; 22 L. R. A. (N. S.) 975; 6 Mart. (N. S.) 260; 70 N. C. 596; 4 McC. 220; 1 McM. 12; 19 S. C. 30.

*Messrs. Grier, Park & Nicholson,* for respondent, cite: *As to bailments:* 6 Corpus Juris 1102, 1104; Storey Bailments, par. 2; Hale Bailments, sec. 13; Ann. Cas. 1913d, 1945; 57 Am. St. Rep. 33; 22 L. R. A. (N. S.) 977. *Prima facie case:* 6 Corpus Juris 1158, 1160; 76 S. C. 247; Ann. Cas. 1913d, 1943; 19 S. C. 30. *Warehouseman:* 8 Words & Phrases 7392.

September 6, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This case and seven others, brought by other plaintiffs named in the record, were tried together, because they all depend upon like pleadings and proof. The judgment in each of the others will be the same as in this. They all grew out of the destruction of cotton owned by the several plaintiffs by a fire which also destroyed defendant's ginnery.

Only the contested issues made by the pleadings and evidence will be stated. The complaint sets out two causes of action: The first is that, for valuable consideration, defendant received plaintiff's cotton, and agreed to gin, bale, and store it until plaintiff should remove it from defendant's yard or sell it. The second is the same, except the additional allegation that defendant warranted that it would be safe to leave the cotton on its yard. Defendant admits the agreement to gin and bale the cotton, but denies making the alleged contracts of storage and warranty of safety, and alleges that, after the cotton had been ginned and baled, plaintiff left it on defendant's yard for his own convenience and at his own risk. Upon the evidence adduced, the Circuit Court directed a verdict for defendant, holding that

there was no evidence to support a finding that Henderson, the agent of defendant through whom the alleged contracts of storage and warranty of safety were made, had authority to make such contracts, or that defendant's negligence caused the loss.

As we have reached a different conclusion as to the inferences that may be drawn from the evidence, we state only so much of the substance of it as bears upon the issues decided below—Henderson's authority and defendant's negligence—without more comment than is necessary to indicate its tendencies and justify our conclusion. We do not intend thereby to intimate that such inferences should be drawn, but only that they may be. It is the province of the jury to say whether they should or should not be drawn, as they honestly believe the truth of the matters at issue to be.

We may say in passing that much of the testimony set out in the record bears not so much upon the points stated as upon the question whether the contracts alleged were in fact made by Henderson, whether with or without authority. That question is not at issue here, for the Court below did not hold that there was no evidence that the contracts were made by Henderson, but only that there was none to support a finding that he had authority to make them.

Defendant ran a public ginnery in connection with its cotton seed oil mill. Henderson was the general manager or superintendent of the business. He solicited patronage for the ginnery to get seed for the oil mill. He admitted that he agreed to store seed for his patrons. His authority to do so was not denied in the evidence.

Plaintiff testified that Henderson was the main official in charge of defendant's business; that he knew of no limitation of his authority; that for several years he had been taking his cotton to another oil mill to have it ginned; that Henderson solicited his patronage, and agreed to take care of his cotton, until he removed or sold it, giving him numer-

ous reasons, detailed in the record, why it would be safe to leave it on defendant's yard, saying, among other things, that it would be stored under wire, and as safe as in any warehouse; that he told Henderson that he had lost a bale at the mill formerly patronized, but they had replaced it, and Henderson said he would make good any cotton lost at his place; that some cotton mills stored cotton free of charge. The apparent scope of Henderson's authority, as general manager of defendant's business, in the absence of notice to those who dealt with him of any limitation thereof, was sufficient to justify an inference that he had authority to contract to take care of plaintiff's cotton, until it was removed or sold. That means ordinary care and the exercise of ordinary diligence for the safety of the cotton. 2 C. J. Tit. Agency, secs, 211-212, 222.

In the absence of notice that, after bailing, it would be left on the yard at the owner's risk, the law implies an agreement to take reasonable precaution to prevent its destruction by fire, certainly until the owner had had reasonable time and opportunity to take it away. Whether such notice was given in this case was a question of fact about which the evidence is conflicting; and, under all the circumstances detailed in the evidence, it would not be unreasonable to find that it was within the apparent scope of Henderson's authority to agree to take care of cotton for a longer time, as an inducement to patronage for the benefit of defendant's business.

Authority to make the alleged contract of warranty of safety of the cotton, in effect, to insure its safety, is not fairly inferable from the bare fact that Henderson was general manager of the business. That implies authority only to do such things and make such contracts as may be necessary, and such as are ordinarily incident to or usual, in the conduct of the business delegated to him. Therefore, in the absence of any other evidence tend-

ing to show authority to make such contract, a recovery thereon could not be sustained.

On the issue of negligence, there was testimony tending to show that the ginnery was on a lot containing five acres, which was inclosed by a wire fence five feet high, with two strands of barbed wire at the top. The inclosure was entered through gates, which were kept-locked, when the plant was not in operation. At the time of the fire, which occurred between 2 and 3 o'clock in the morning, the keys were locked up in the office to which Henderson had one key and the office boy another. Neither of them could be gotten for some minutes after the fire was discovered. Those who first got there did succeed in saving some cotton after the gates were opened, and could have saved more, if they could have gotten in sooner. A great deal of cotton was piled close to the building, though there was room on the yard for it to have been placed further away. While there were water hydrants on the premises, and barrels of chemicals and fire extinguishers kept in the building, they could not be used promptly and effectively, because the yard and buildings were locked up, so that those who first got there could not get in, and also because there was either no hose to fit the hydrants, or not enough hose to put water on the fire. The fire originated in the second story of the ginnery, the interior of which was covered with lint cotton, and there was evidence that the insulation of the electric light wires was defective.

We have not stated the evidence in detail, but only enough of the ultimate facts which it tended to prove to justify our conclusion that the Circuit Court erred in refusing to submit the issue of negligence to the jury.

Judgment reversed.