70 So.2d 421.

**GREAT AMERICAN INS. CO.**

v.

**DEDMON.**

**8 Div. 700.**

Supreme Court of Alabama.

Nov. 19, 1953.

Rehearing Denied Feb. 25, 1954.

Jos. S. Mead, Birmingham, for appellant.

Guin & Guin, Russellville, for appellee.

CLAYTON, Justice:

This is a suit on a policy of automobile insurance, containing what is known as "Comprehensive Coverage." The pertinent part of the policy is:

"Coverage D—Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset

"To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

The complaint is in two counts. Count 1 avers that the insured suffered the complete loss of his automobile by reason of theft. Count 2 avers that he suffered complete loss of his automobile by reason of vandalism. At the conclusion of the testimony, the trial court, at the request of the defendant, gave the affirmative charge as to count 1, and submitted the case to the jury under count 2. There was verdict and judgment for plaintiff. Defendant's motion for new trial was overruled, and defendant appeals.

Succinctly stated, the facts necessary for us to consider are that plaintiff left his automobile parked in front of the Red Bay hotel, with the ignition locked and the key in his pocket. Some time after eleven o'clock, on the night of July 13, 1952, plaintiff's 20-year old son, Larry Dedmon, came to the place where the car was parked and, in some way, started the engine and drove the car to the place where it was overturned and badly damaged.

Larry Dedmon previously had been suffering from a mental disorder, dementia praecox, and had been treated at Bryce Hospital from July, 1950, until March,

1951, when he was discharged therefrom, at which time he was practically normal. Medical experts testified that dementia praecox may in some cases recur, while in others, a permanent cure is effected after one period of treatment. At the time of the accident, Larry was living in Red Bay with his sister and was not permitted to drive his father's car without some other member of the family being with him. There was lay testimony to the effect that Larry was drawing compensation from the Veterans Administration on account of a nervous condition. Also, testimony was introduced that Mrs. Dedmon, the mother of Larry, had signed a petition for the purpose of having him declared insane, in order that he might draw compensation, but the petition was never filed in court. Further testimony was that Larry was working as a cook in a restaurant and living a normal life, but was highly nervous.

A decision in the case depends upon the construction which shall be applied to the word "vandalism," as used in the insurance policy. Appellant, defendant below, insists that in order to constitute vandalism, there must be a specific intent to injure or destroy the particular article involved, which, in this case, was the automobile.

Appellee relies upon the proposition that damages suffered as a proximate result of a wanton, unlawful act, done with a reckless and gross disregard of the consequences, is sufficient to constitute vandalism under the terms of the policy, and thus to remove the damages from the non-liability exception in case of collision or upset. To support this position, appellee cites the alleged circumstances that the driver of the automobile was driving the car without the owner's permission, he was driving while under the influence of alcohol, and he was driving at an excessive speed, estimated to be as much as 100 miles per hour.

Appellant also raised the point on the trial that Larry Dedmon did not have mental capacity to commit a willful or wanton act, by timely exception to the court's oral charge in submitting this question to the jury for decision.

This appears to be a case of first impression in the courts of Alabama.

Webster's New International Dictionary, 1951 edition, gives the following definitions, which are related to the question:

"Vandal: 1. One of a Germanic people anciently dwelling south of the Baltic between the Vistula and the Oder. In the 4th and 5th centuries they overran Gaul, Spain, and Northern Africa, and in 455 entered Italy and sacked Rome, destroying many monuments of art and literature. Their final stronghold, the Vandal kingdom of North Africa was overthrown by Belisarius in 534. 2. (usually not capitals), One who willfully destroys or mars anything beautiful, as a work of art; also a wanton or ignorant destroyer or defacer of any building, monument, etc., which should be preserved; as, to protect a museum against vandals.

"vandal (adjective) of, pertaining to, or characteristic of Vandals or vandals; carelessly or ignorantly destructive; given to vandalism.

"Vandalish (adj.) having the character of a vandal; done or appearing as if done by Vandals; wantonly destructive.

"Vandalism: 1. The spirit or conduct of, or like that of, the Vandals; hostility to or willful destruction or defacement of things of beauty, as works of art, literature, historical monuments, etc. 2. An act of a Vandal or vandal."

Counsel on both sides of the case have provided us with excellent briefs, and cite three cases from other jurisdictions in which the question of vandalism has been considered in suits on policies of automobile insurance. And we have found no others. The trial court in the case at bar, throughout the trial and in his charge to the jury, followed closely, the case of Unkelsbee v. Homestead Fire Ins. Co., D.C. Mun.App., 41 A.2d 168, 170, et seq. That was a suit upon an automobile insurance policy containing substantially the same Comprehensive Loss provision as quoted above in this opinion. In that case, Richardson, C. J., speaking for the majority of the Court said:

"It may be said that there was no evidence of intentional injury to the automobile. To one who is a scholar and familiar with the history of the barbaric tribe whose depredations perpetuated its name in our dictionaries, to one 'skilled in the niceties of language,' the point may have weight. But to the popular mind any unusual destruction wrought in the doing of a wrongful act, does, in our opinion merit and receive the title 'vandalism.' True, mere accidental damages may not be so termed. But if one were to enter a museum, violate its rules by lifting and handling a valuable object, unintentionally let it fall and be broken, few would hesitate to describe the act as vandalism."

The trial court, in its charge, gave the jury the definition of vandalism as "the spirit or conduct of the Vandals; hostility to, or willful destruction or defacement of things of beauty, as works of art, literature, etc., often, in sense corresponding to Vandal." Also, he said, "the higher Courts have held that to the popular mind any unusual destruction wrought in the doing of a wrongful act, does, in our opinion, merit and receive the title 'vandalism'. True, mere accidental damages may not be so termed. But if one were to enter a museum, violate its rules by lifting and handling a valuable object, unintentionally let it fall and be broken, few would hesitate to describe the act as vandalism."

After stating the respective contentions of plaintiff and defendant, the court submitted to the jury the issue of vandalism, for determination. And, as stated above, the jury determined that the loss was a proximate result of vandalism.

This court has said, "It is generally conceded that the collision clause in such policies, like all insurance contracts,

should be construed most strongly against the insurer; this upon the sound basis of reason that the form of contract is made by him and tendered to the public." St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 594, 100 So. 904, 905, 35 A.L.R. 1018. We do not feel that we should here construe the word "vandalism" in its narrowest sense, but hold that the proper construction should be such as is considered in the popular mind. Unkelsbee v. Homestead Fire Ins. Co., supra. The jury did, and properly could have found wantonness from the circumstances attending the accident. Dickson v. Dinsmore, 219 Ala. 353, 122 So. 437; Baker v. Rainer, 220 Ala. 207, 124 So. 737; Baker v. Elebash, 220 Ala. 198, 124 So. 739.

This disposes of all questions except that raised by assignment 13, that Larry Dedmon at the time of the accident did not have mental capacity willfully or wantonly to do an act which would constitute vandalism. Enough of the testimony in respect to this is set out above to show that this was for the jury to decide.

The case of Rich v. United Mutual Fire Ins. Co., 328 Mass. 133, 102 N.E.2d 431, which appellant cites, turned upon the point of evidence that no sufficient testimony was produced to show how the automobile was caused to run down the hill, or that it was not by accident, and in that respect is not analogous to the instant case.

The New Mexico case of Rea v. Motors Ins. Corp., 48 N.M. 9, 144 P.2d 676, cited by appellant, involved a suit for damages alleged to have resulted from malicious mischief. A careful reading of that case discloses that the insurance policy there sued on was quite different from that presently being considered, and the circumstances likewise were dissimilar.

The judgment of the trial court is affirmed.

Affirmed.

All the Justices concur, except LIVINGSTON, C. J., who dissents.