95 N.J. Super. 471 (1967)
231 A.2d 824
JOHN PARNELL, PLAINTIFF-RESPONDENT,
v.
ROHRER CHEVROLET CO., INC., DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORP., LTD., THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1967.
Decided June 29, 1967.
*475 Before Judges CONFORD, FOLEY and LEONARD.
Mr. James A. Mullen, Jr. argued the cause for third-party defendant-appellant (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. James J. Casby, Jr. argued the cause for defendant and third-party plaintiff-cross-appellant.
Mr. Paul R. Melletz argued the cause for plaintiff-respondent (Mr. Albert J. Klein, attorney).
*476 The opinion of the court was delivered by CONFORD, S.J.A.D.
This action was instituted by the owner of an automobile to recover damages for its being stripped of its most essential parts while in the custody of defendant automobile agency. The latter, which had had possession of the vehicle while repairing it for plaintiff, brought a third-party claim against the third-party defendant insurance company on a liability policy which it deemed to cover it for liability on plaintiff's claim. Judge Rizzi, sitting in the county district court without a jury, found for plaintiff against the automobile agency ("Rohrer," post), and also for the latter against the insurance company ("General Accident," post). Rohrer appeals the determination in favor of plaintiff; General Accident, that in favor of Rohrer on the third party claim.
The statement of evidence certified by the trial court shows the following.
Plaintiff had purchased a 1962 Chevrolet automobile in September 1964 for $1,995. On October 9, 1964 he left it with Rohrer for repairs, and a "valve job" was performed on it at a charge of $134.88. Plaintiff was notified October 14 that the car was ready but he did not call for it because he did not have the funds to pay the bill and Rohrer refused to deliver the car without payment.
Plaintiff did not come to pay for and pick up the vehicle until November 9, 1964. In the meantime, it was kept in a large cyclone-fenced enclosure behind the Rohrer building which was apparently locked at night. When plaintiff called on that date for the car he was told that it had been "stripped." It appeared that a hole had been cut in the fence sometime during the previous three days (including a weekend) and that several cars had been stripped. Removed from plaintiff's automobile were four wheels and tires, the rear axle and rear end, the battery, transmission, carburetor, radiator and manifold distributor valve cover. A stipulated repair bill for labor and parts to rehabilitate the vehicle was $1,662.84. The bill shows that a great many other portions *477 and parts of the car in addition to the major parts removed were damaged in varying degrees and required repair or replacement. There was evidence that the parts removed had been dragged through the fence hole and carted away by the miscreants.
Further reference to the material facts is reserved for the discussion of the legal issues involved.

I
The action against Rohrer is predicated on its asserted negligence as a bailee in safekeeping plaintiff's car. The degree of care owing by a bailee depends on the nature of the bailment. If, as here found by the trial court, the bailment is one for the mutual benefit of bailor and bailee, the duty is to exercise reasonable care for the safekeeping of the chattel bailed. Rodgers v. Reid Oldsmobile, Inc., 58 N.J. Super. 375, 380 (App. Div. 1959). As to the lesser duty of a gratuitous bailee, see Nelson v. Fruehauf Trailer Co., 20 N.J. Super. 198 (App. Div. 1952), affirmed on other grounds 11 N.J. 413 (1953).
Rohrer contends it was merely a gratuitous bailee at the time of the loss because a reasonable time after completion of the repairs had elapsed without retaking of the car and thereafter the bailment was only for the benefit of the bailor. We disagree. The bailment was still one for mutual benefit since Rohrer had the security interest in the car of a garagekeeper's lien for the amount due it. N.J.S. 2A:44-21. The case of Robinson v. Southern Cotton Oil Co., 108 S.C. 92, 93 S.E. 395 (Sup. Ct. 1917), does not support Rohrer's argument that once a reasonable time for the bailor to pick up the chattel has expired the duty of the bailee changes to that of a gratuitous bailee regardless of any other circumstances. On the special facts of this case Rohrer retained sufficient interest in the property to continue the character of the bailment as one for mutual benefit until the loss. Moreover, lienors in possession are generally under *478 a duty of reasonable care. Cf. Zanzonico v. Zanzonico, 2 N.J. 309, 316 (1949).
We find sufficient in the proofs to justify the trial court finding of negligence by Rohrer notwithstanding that the burden of persuasion on the issue remained with plaintiff throughout the case. See Rodgers v. Reid Oldsmobile, Inc., supra, 58 N.J. Super., at p. 380. In this regard the court referred to evidence that the storage enclosure was completely dark at night, there was no watchman during the period when the depredation occurred although Rohrer had had a watchman previously, and no burglar alarm or other system for protection of the property was maintained. Nor do we think Rohrer was prejudiced in the court's formulation of the basis for its conclusion in terms of the failure of defendant to "overcome the presumption of negligence which existed in favor of plaintiff."
It is true that the bailee has only the burden of coming forward to meet the "procedural presumption" of negligence which arises upon the plaintiff's showing of the bailment and that the goods were damaged while in possession of the bailee, the bailor retaining the ultimate burden of persuasion on the issue of negligence. Rodgers v. Reid Oldsmobile, Inc., supra, at p. 380. But we are satisfied the court's finding of negligence was based on a weighing of the proofs and that it did not accord the presumption any artificial probative weight.
Finally, we agree with the court that plaintiff could not reasonably be accounted contributorily negligent by mere reason of his financial inability to reclaim his car sooner.
We affirm the determination of Rohrer's liability to plaintiff.

II
General Accident contends that the terms of the policy did not on the facts shown justify a determination of coverage of Rohrer's liability to plaintiff.
*479 The insurer undertook to "pay on behalf of the insured [Rohrer] all sums which the insured shall become legally obligated to pay as damages because of:
"* * *
THEFT. loss to an automobile caused by theft of the entire automobile;
RIOT AND VANDALISM. loss to an automobile caused by riot, civil commotion, malicious mischief or vandalism."
Rohrer argues that its liability to plaintiff arose from acts of vandalism within the policy coverage; alternatively, that the extent of the damage to the car fairly connotes theft of the entire automobile. General Accident contends that the loss here was basically the result of theft; and that the express coverage of "theft of the entire automobile" implies the intent of the company not to be liable under the vandalism clause for loss due to thefts of parts of an automobile, as here.
We first consider whether the vandalism clause justifies the claim of coverage, considered independently of the effect of the theft clause. General Accident's brief practically concedes that without the theft clause coverage could be founded on the assertedly "ambiguous" vandalism clause. Without regard to the concession, we are of the view that in the average layman's understanding despoliation of a motor vehicle such as here occurred is vandalism. No one argues that this policy should be construed in terms of the restricted classical concept of vandalism as "Willful or ignorant destruction of artistic or literary treasures; hostility to or contempt for what is beautiful or venerable." Black's Law Dictionary (4th ed. 1951), p. 1722. The subject of vandalism in its modern, common acceptation can be any type of property. The pinpoint question posed is whether, if the destruction be gross and deliberate, as here, the executed intent of the spoiler to steal affects the fair signification of the term as it would be understood by the average purchaser of insurance. We think not.
*480 Insurance policies should be interpreted in a manner which would conform to the understanding of the general public which purchases them. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 488 (1961). And doubts are to be resolved in favor of the insured. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513 (1965). These precepts impel the view that vandalism done in order to perpetrate theft is nonetheless vandalism within such a policy as this.
Two modern cases have defined vandalism as "any unusual destruction wrought in the doing of a wrongful act." Great American Ins. Co. v. Dedmon, 260 Ala. 330, 70 So.2d 421, 423, 43 A.L.R.2d 599 (Sup. Ct. 1953); Unkelsbee v. Homestead Fire Ins. Co., 41 A.2d 168, 170 (D.C. Mun. Ct. App. 1945). Without necessarily subscribing to the points decided in those cases, we regard the definition as substantially comporting with the general present-day understanding of the term "vandalism." Rohrer has marshalled an impressive array of current news reports wherein despoliation of property is commonly referred to as vandalism in the context of thievery of portions of the despoiled property (e.g., light bulbs taken from outdoor Christmas display; coin boxes ripped from pay telephones; taking of plumbing valves from fixtures in school building). The common concept thus illustrated is that while the items taken have been stolen, the property or article as a whole has been vandalized by the damaging stripping antecedent to the theft.
We therefore conclude that the plaintiff's car was, in common parlance, vandalized; thus the loss for which Rohrer was held liable to plaintiff was due to vandalism.
We are then brought to the question whether the "theft" clause of the policy warrantably generates the inference of exclusion of coverage, the loss being argued to be attributable to theft of parts of the car rather than "theft of the entire automobile." At the outset, it is clear that there is no express exclusion in the policy, and the rule is that even express exclusion clauses are construed strictly against *481 the insurer. Ohio Cas. Ins. Co. v. Flanagin, supra, 44 N.J., at p. 514. A fortiori as to asserted implied exclusions.
The argument of the insurer must be weighed against the precise set of facts presented. We are not here called upon to decide whether there would be liability under this policy if a spare tire were removed from the trunk of the car, or a cigar lighter from the dashboard. The issue here is whether, when a car is stripped by miscreants of practically every component which goes into its function as a self-propelled vehicle, many other portions of it damaged substantially, and the remnant left a useless shell, the resulting condition of the chattel, for which the insured is liable in damages to the owner, is not still fairly to be deemed a covered loss by vandalism notwithstanding that after the stripping the vandals trucked some of the parts away. Our answer to this question must be in the affirmative within the fundamental precepts for construction of insurance policies cited above by which we must be guided.
Had the removed parts of this car been strewn along the ground rather than carted off the insurance company would be without an argument. But in that state of facts the condition of the remnant of the car itself (before repair) would be no different in any regard from that in which it was actually here left. In either case, the car is properly to be regarded as vandalized and coverage therefor not refuted by the fact that the policy also covers theft of the entire automobile. The fact that the availability of the ripped-out parts would, as to the case supposed, lessen the cost of repair, is irrelevant to the issue of coverage. As well stated by Judge Rizzi below, "The finding of an act of vandalism is entirely consistent with a finding of a subsequent theft after the act of vandalism has been completed." If the insurer desires not to be liable in such circumstances, it must express its intent to that effect in the policy so plainly that it cannot be misunderstood. This it has not here done.
In view of the foregoing conclusions, we need not consider Rohrer's alternative contention that where the damage to *482 the car by the thieves is so thoroughgoing that the cost of repair is practically equal to its resale value, the loss may fairly be regarded as one consisting of "theft of the entire automobile" within that coverage clause of the policy.
Judgment affirmed as to all parties.