JONES, Justice.
Plaintiffs are members of an investment group that purchased a warehouse outfitted with refrigeration equipment. Initially, the warehouse was leased back to the original owner, who was charged with providing the insurance on the building. After the lease expired, however, Plaintiffs were faced with procuring insurance on the property.
One of the investors, John Theiss, who operated a separate business, Gulf Coast Paint & Supply Company (Gulf Coast), contacted the insurance agent who had provided coverage for his separate business and requested the agent’s help in acquiring insurance on the warehouse. That agent, in turn, contacted Aetna’s local representative, who, according to the agent, assured him that Aetna would provide coverage for the warehouse if Gulf Coast would store in it at least $2,000 worth of its material.
The trial judge held that this condition was met and that a policy was issued by Aetna covering the warehouse. This policy specifically covered damage due to vandalism, but did not cover losses due to theft.
The trial court entered the following judgment:
“This matter was tried without a jury on the 13th and 14th days of August, 1984. Thereafter, the parties submitted briefs which have been carefully reviewed by the Court. Based upon the testimony offered in open Court, the exhibits, the deposition testimony read into evidence, the demeanor of the witnesses, and the briefs and arguments of the parties, this Court makes the following findings of fact and conclusions of law:
“FINDINGS
“A. On February 11, 1983, the defendant issued a binder and, subsequently, on March 14, 1983, a policy of insurance covering a building known locally as the “Warley Building.”
“B. Thereafter, on and shortly before April 15, 1983, the building suffered extensive damage at the hands of vandals who destroyed and/or removed electrical and refrigeration fixtures insured under the policy.
“C. The building was occupied at the time of the loss with Gulf Coast Paint & Supply, Inc., storing a quantity of aggregate material loaded on a pallet in the premises.
“D. The damage to the insured property totalled $80,617.00. Of that figure, $9,618.00 represents the cost of fixtures that were removed.
“CONCLUSIONS OF LAW
“A. This Court has reviewed the applicable cases dealing with vandalism damage and theft of fixtures. Those authorities include the following: “[Herein the court cited essentially those cases reviewed in the instant opinion.]
“Having reviewed these authorities, this Court concludes that the loss as described in plaintiff’s Exhibit 10, with the exception of the $1,000.00 deductible, is covered under the vandalism clause of the policy and with the further exception of the $9,618.00 worth of fixtures that were removed from the premises after the vandalism.
“THEREFORE, it is ORDERED, ADJUDGED and DECREED that a judgment be and hereby is awarded in favor of the plaintiffs and against the defendant in the amount of $69,999.00, plus $4,199.94 in interest for a total judgment of $74,198.94 plus costs.”
*382 I.
Aetna seeks to have the policy declared void ab initio, because the issuance of the policy was based on information which it claims was fraudulent. Primarily, it argues that Gulf Coast was storing some of its goods in the warehouse for the sole purpose of deceiving the Company into issuing a policy with lower premiums and greater coverage. The ■ Company makes this assertion in the face of evidence that its own agent actually suggested this arrangement. The trial judge, after hearing the testimony and the depositions read into the record, and after observing the demeanor of the witnesses, concluded that the evidence presented to him ore tenus did not support Aetna’s contention. The evidence of record amply supports this finding.
Alternatively, Aetna contends that the amount of its liability ought to be reduced to $25,000 (the damages which, according to Aetna, resulted exclusively from the acts of vandalism), because the policy, by its own terms, excludes all other losses. Specifically, the policy provides that Aetna should not be liable for loss:
“2. by pilferage, theft, burglary or larceny except that this Company shall be liable for willful damages to the building^) covered caused by burglars in gaining entrance to or exit from such building(s) or any part of the building(s).”
The interpretation of this provision of an insurance contract (the exclusion of coverage applicable to theft in the context of coverage for vandalism) presents an issue of first impression in this jurisdiction. Our review of the excellent briefs of counsel, as well as our independent search, reveals several cases from other jurisdictions relating to this issue. We now review those cases briefly as a preface to our holding. While each case may be distinguished upon its facts, all are related by a similar insurance contract provision.
II.
In Theo v. National Union Fire Insurance Co., 99 Ga.App. 342, 109 S.E.2d 53 (1959), a homeowner sought to recover on two houses that were damaged by vandalism and which were insured against vandalism and malicious mischief, but not against theft or burglary. An inspection after the vandalism revealed that some items were “missing.” Among the missing items were bathroom fixtures, plumbing, an electric water heater, an electric refrigerator, window frames, and the kitchen sink. The Georgia Court of Appeals concluded that the missing items must be considered to have been stolen, an event for which coverage was expressly excluded, and thus denied recovery.
Another Georgia case, Pacific Indemnity Co. v. N.A., Inc., 120 Ga.App. 793, 172 S.E.2d 192 (1969), interpreted a similar provision in a multi-peril insurance policy as it applied to a commercial building. In that case, someone removed a large amount of copper flashing from the roofs of buildings within a shopping center. The flashing was a permanent part of the roof, and removal of the copper caused serious damage to the roof. The court held that because the injury occurred in connection with a theft, and theft was a part of the express exclusionary clause, there could be no recovery.
In State Auto Mutual Insurance Co. v. Trautwein, 414 S.W.2d 587 (Ky.1967), the Kentucky Court of Appeals, then the state’s highest court, came to an opposite conclusion. In that case, some apartments were broken into and air conditioning units which had been permanently affixed to the walls were stolen. The court found that, because the walls were injured by the process of removing the units, the apartment owner could recover. Recovery was not limited to the cost of repairing the injury to the walls, but included the cost of replacing the air conditioning units.
Similarly, in Allstate Insurance Co. v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla.App.1967), the Florida court said, where coin operated washing machines were damaged (presumably the coin boxes were broken into), that the damage was due to vandal *383 ism. Even though the damage occurred in connection with a theft, the damage was not excluded from coverage.
Another case in the same vein is Parnell v. Rohrer Chevrolet Co., 95 N.J.Super. 471, 231 A.2d 824 (1967), heavily relied upon by Plaintiffs. In that case a car was stripped of its parts, and the policy insuring the car provided coverage for vandalism but not for the theft of the parts. The court determined that insurance policies must be interpreted to conform to the understanding of the general public. Therefore, it held, vandalism in the furtherance of a theft was still vandalism and subject to coverage by the policy.
Two other cases deal with injuries caused by more remote burglaries. The first, Beauty Supplies, Inc. v. Hanover Insurance Co., 526 S.W.2d 75 (Mo.App.1975), concerned property stored in a warehouse that was covered by a similar insurance contract provision. Burglars broke into the unoccupied second floor of the warehouse and stole some of the plumbing fixtures, leaving the water flowing from the pipes. The insured property on the first floor was subsequently damaged by the water. Water damage was not a risk specifically insured against. The Missouri Court of Appeals concluded that the damage was due to vandalism and was covered by the policy, notwithstanding the fact that a burglary preceded the vandalism and a theft immediately followed.
Similarly, in Cresthill Industries v. Providence Washington Insurance Co, 53 A.D.2d 488, 385 N.Y.S.2d 797 (1976), the unoccupied third floor of a warehouse was broken into and the plumbing fixtures were taken. Again, the water found its way to the first floor and caused considerable damage to the insured goods. The Appellate Division of the Supreme Court of New York formulated a three-part test in which a plaintiff was required to show:
“(1) the occurrence of an act of vandalism or malicious mischief within the meaning of the policy, (2) proximate cause resulting in a ‘direct loss’ to his property and (3) the inapplicability of the cited exclusionary clause (actually the burden of proof on the issue of ‘exclusion’ is on the insurer rather than upon the insured).” 53 A.D. at 496-497, 385 N.Y.S.2d at 802.
The court concluded that the damage was done by a completed act of vandalism, the character of which was not changed by the precedent burglary nor the subsequent theft. Applying its three-part test, the court concluded that plaintiff had met its burden with respect to the first two parts, and that defendant had failed to prove the applicability of the exclusion within the policy, and, thus, allowed recovery.
In Pryor v. State Farm Fire & Casualty Co., 74 Cal.App.3d 183, 141 Cal.Rptr. 394 (1977), three houses which were being readied for sale were broken into. The major built-in appliances, as well as many of the light fixtures and much of the carpeting, were removed. The court determined that, because no structural damage was done to the houses, the loss of the appliances was the result of a theft, which was expressly excluded from the policy’s coverage. The court held, however, that their forcible removal was the result of vandalism, and the court determined the correct measure of damages to be the installation costs after new appliances, carpeting, and light fixtures were purchased by the owner/insured.
A more recent case, Sterling v. Audubon Insurance Co., 452 So.2d 709 (La. App.), cert. denied, 456 So.2d 169 (La.1984), again dealt with damage done to a private residence insured by a similar provision. The unoccupied residence was broken into on three separate occasions. In addition to perpetrating various acts of vandalism, the burglars removed some of the light fixtures, the air conditioner compressor, and the kitchen range and also ripped up a certain amount of the carpeting. The Louisiana court adopted the position held by the California court in Pryor, and determined that the correct measure of damages was the cost necessary to install the replacement items, but not the cost of the items themselves. In addition, the court allowed *384 recovery for incidental damage done by the burglars in the act of removing the items which were stolen.
A case more similar to the one at bar is United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353 (Tex. 1971). In that case, a warehouse was broken into and the building’s own high voltage electrical wiring was removed. Again, the insurance policy provided coverage for losses due to vandalism or malicious mischief, but not for those due to pilferage, theft, burglary, or larceny. The Supreme Court of Texas interpreted the provision to provide coverage for losses to the building even though those losses were in connection with a burglary. The taking of the wiring caused damage to the building, so that the correct measure of damages, according to the court, was all costs of material and labor required to repair the building. Incidental items, such as tools, which were also taken, were held not to be covered.
The most recent case uncovered by our research also dealt with a commercial building. In Benson Holding Corp. v. New York Property Insurance Underwriting Association, 124 Misc.2d 955, 478 N.Y.S.2d 570 (1984), an insurance contract provision almost identical to the one at bar was in effect. The plaintiffs building was broken into and the elevator control panel was removed from above the ceiling of the elevator. The New York City municipal court found this removal of the device to be an act of vandalism covered by the insurance contract, citing some of the cases mentioned above. See, also, Annot., 23 A.L.R.3d 1259 (1969).
III.
The common denominator of these cases is their interpretation of an insurance contract provision very similar, if not identical, to the one here presented. Aside from that, most of the courts have made an attempt to define the term “vandalism” in connection with their interpretation of the insurance provision. Most of these courts have concluded that the acts complained of were acts of “vandalism,” as that term is understood in common parlance. See, generally, 44 Words and Phrases, “Vandalism” (1962), and the discussion of the term “vandalism” in Parnell v. Rohrer Chevrolet Co., supra, 95 N.J.Super. at 480, 231 A.2d at 828-829.
This Court is aided in this area by one of its earlier opinions. In Great American Insurance Co. v. Dedmon, 260 Ala. 330, 70 So.2d 421 (1953), Justice Clayton, speaking for the majority, stated: “We do not feel that we should here construe the word ‘vandalism’ in its narrowest sense, but hold that the proper construction should be such as is considered in the popular mind.”
Further, it is by now a firmly established principle that words and phrases of an insurance contract which are reasonably susceptible to different interpretations are to be construed liberally in favor of the insured and strictly against the insurer. The basis for such a rule is that the insurance company drew up the language of the contract, and the purchaser of the policy had no voice in the selection or arrangement of the words employed. Unkelsbee v. Homestead Fire Insurance Co., 41 A.2d 168 (D.C.Mun.App.1945).
IV.
After reviewing the above cases, we approve the interpretation adopted by the California and Louisiana courts: that the insurance contract provision before us for interpretation provides coverage for acts of vandalism or damage done to the building in connection with a burglary or theft. This policy provision does not provide coverage for the cost of replacing stolen items, except to the extent noted, but does cover the costs associated with the reinstallation of the items.
Applying this interpretation to the case at bar, we find that some of the items related to the subject warehouse were stolen, and that the insurance company should not be liable for the replacement cost of those items. On the other hand, it is equally clear that some of the damage of which Plaintiffs complain was the direct result of *385 vandalism; thus, the insurance company will be liable for the total cost, both of materials and labor, for the repair of that damage. Specifically, much of the copper wiring and copper tubing used in the warehouse refrigeration system was removed. The damage for which Aetna is required to pay, however, stems not from the taking of this wire and tubing, but from the damage to the equipment which occurred when these items were removed.
According to expert testimony, once the wiring and tubing were broken or separated, damage occurred to the refrigeration equipment; and, thus, damages for such loss are recoverable whether or not these items were removed after being torn from the equipment. The incident of the theft in no way diminishes the act of vandalism, and the insurer is liable for the diminution in value of the wire and tubing caused by the vandalism. Plaintiffs have the burden of proving the value of the wiring and tubing which were taken, which they have already done; but the insurance company is entitled to a reduction to the extent, if any, of the reasonable salvage value of the wiring and tubing after it was taken from the refrigeration equipment.
V.
After reviewing the applicable law relating to vandalism damage and the theft of fixtures, the trial judge determined the measure of damages by deducting the cost of the missing equipment from the total cost of repairs occasioned by the theft and vandalism, so that the insurance company would not be paying for the stolen equipment in contradiction to the express terms of the insurance policy. After deducting the cost of the missing equipment from the total cost of repairs, the trial judge retained in that figure the labor costs related to the installation which will be required once the missing equipment is replaced. Although the trial judge was essentially correct in his effort to separate the loss incurred by theft (excluded by the policy) from the loss incurred by vandalism (covered by the policy), we hold that the trial judge was in error in including the cost of the copper tubing in the missing equipment category, and deducting the cost of that tubing from the total cost of repairs. Had the tubing not been removed from the warehouse, given the acts of vandalism, the insurance company nevertheless would be liable for the entire amount — the tubing and labor costs. The simple fact that the tubing was removed after the vandalism occurred should not relieve the insurance company of that liability. The intent of the vandals at the time of the destructive act is irrelevant to this issue of liability. Had the tubing not been removed, however, the insurance company would have been entitled to the damaged tubing for resale of the copper scrap metal for salvage. Consequently, the insurance company must be afforded the opportunity to prove that the tubing which was taken would have had some salvage value, and to prove what that value would be.

The Decision

1. On the Appeal
As to the appeal, we find no error prejudicial to the Appellant.
2. On the Cross-Appeal
As to the cross-appeal, we find that the trial judge’s conclusions of law and his award of damages based thereon are substantially in compliance with the legal principles set forth above, with the following exception: We find that the “exception [from the total amount of damages proved by Plaintiff] of the $9618.00 worth of fixtures that were removed” is in error to the extent that it includes the value of the copper wiring and tubing damaged and removed from the premises after the vandalism. To that limited extent, the judgment of the trial court is reversed; and on remand, with or without additional testimony, as the trial court may deem appropriate, the trial court shall determine the value of the copper wiring, if any,[1] and the value of *386 the copper tubing necessary for the reins-tallation of the damaged refrigeration equipment here involved, less, of course, the salvage value.
AFFIRMED AS TO THE APPEAL; REVERSED AND REMANDED AS TO THE CROSS-APPEAL.
TORBERT, C.J., and MADDOX, FAULKNER, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.

. While it is clear from the record that the removed copper tubing was damaged beyond *386 re-use for the reinstallation of the refrigeration equipment, it is not clear whether, factually, the damaged and removed copper wiring falls within this same category. This, of course, will be for the trial court’s determination on remand.