BRENT GOOD ORCUTT, PLAINTIFF-RESPONDENT, v. ANNA ORCUTT HOYT AND BARBARA M. COLWELL, INDIVIDUALLY, AND HENRY H. HOYT, DONALD R. BALDWIN AND CURTIS COLWELL, EXECUTORS OF THE LAST WILL AND TESTAMENT OF KATE GOOD ORCUTT, DECEASED, DEFENDANTS-APPELANTS.

Argued November 13, 1950—Decided December 11, 1950.

Mr. *Bernard M. Shanley* argued the cause for respondent Mr. *Harold H. Fisher* on the brief (*Messrs. Young, Shanley, Foehl & Fisher,* attorneys).

Mr. *Alfred C. Clapp* argued the cause for appellants.

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment in the Superior Court, Chancery Division, Essex County, and comes to us on our own motion.

In the estate of Kate Good Orcutt, deceased, were two rings inventoried as follows:

"(1) Platinum Ring
  Set with Marquise Diamond
  Weighing Approximately
  4.5 carats                                    $2,250.00
"(2) Gold Ring
  Set with Solitaire Diamond
  Weighing Approximately 1.50
  carat (Diamond is 'Old-Mine-
  Cut,' and of poor quality
  and imperfect)                                  300.00"

The litigation had but one issue, stated thus in the pretrial order:

"The sole question for determination is which of the aforesaid two rings was bequeathed to the plaintiff in Article 'Second' of the Last Will and Testament of the decedent."

Article "Second" of the will provided:

"Second: I give and bequeath unto my son, Brent Good Orcutt, my large diamond solitaire ring as and for his absolute property."

The trial court concluded that the will presented no ambiguity; that both rings were solitaire diamond rings; and that the marquise ring came clearly within the designation of "my large diamond solitaire ring" and, therefore, went to the decedent's son, the plaintiff in the action. Judgment was awarded accordingly. Defendants appeal.

It was the position of the defendants at the trial that they should be permitted to prove certain facts from which, as they contended, the inference could be drawn that the decedent, in using the expression "my large diamond solitaire ring," did not refer to the marquise diamond platinum ring. The

argument was resolved into an offer of proof which was refused and a question which was overruled. In our opinion the matter thus rejected was entirely lacking in the significance imputed to it. To understand the compass and effect of the rulings it is necessary to consider them specifically and to appraise the circumstances attendant upon them.

Defendants offered to prove that the decedent had executed earlier wills, specifically a will made in 1940, which contained the precise language of Article Second of the present will. Mrs. Orcutt did not own the marquise ring until 1942 when she acquired ownership under the will of her stepmother. The argument upon which defendants rested their offer was that since testatrix did not own that ring in 1940, she could not have had it in mind when she made the will of that year, and that inasmuch as in 1947 when she made the present will she used the same language as in the 1940 will, it followed that she could not, in 1947, have had the marquise ring in mind. That reasoning, on its own content, is neither conclusive nor persuasive, and the attendant circumstances deprive it of any efficacy. Defendants' attorney, in making his offer of proof, stated that if he were permitted to introduce the 1940 will, he would put in no further proof. No evidence was presented or offered that the testatrix, at the making of the earlier will, had the smaller diamond or indeed any solitaire diamond ring. Therefore, even if the 1940 will had been admitted, there would have been nothing from which the court could have deduced that the testatrix referred in that will to either of the rings in dispute or to any object of which we now have knowledge, whereas both of the rings were in the decedent's ownership at the making of the 1947 will. The implications are of a complete change in the circumstances toward which testamentary disposition was directed.

The two rings were shown to the trial court and, by photographic reproduction, are shown to us; and it appears from the inventory that the marquise is three times the size of the other. Assuming that the marquise is a diamond solitaire ring, it is clear that as between the two rings it was the dece-

dent's "large diamond solitaire ring" and, therefore, the subject of the bequest. There was no substantial dispute in the evidence upon the propositions that both rings were solitaires, and that the term "marquise" had relation to the cut and shape of the stone, not to its aspect as a solitaire. It was also in proof, without contradiction, that the presence of smaller stones surrounding a large diamond produces what is known as a "cluster," and that a diamond so set is not a solitaire, but that the presence of smaller stones, as here, on the shank of a ring containing a diamond, even though the diamond be cut as a marquise, does not change the classification from that of a "solitaire." The two expressions refer to unrelated facts; a marquise is such because of the shape of the stone, and a solitaire, whether the stone is cut as a marquise or otherwise, is a solitaire because of its setting. Defendants put a jeweler upon the stand for the purpose of drawing a distinction between the two rings, but the substance of his testimony on the point of dispute is reflected in this question and answer:

"Q. You wouldn't say that that (the marquise) was not a solitaire, would you?
A. No, I wouldn't."

Therefore, the assumption at the beginning of this paragraph becomes a fact and the conclusion based thereon is established.

The second article of the will speaks with complete sense and clarity. Every word is apt. It is without ambiguity either as to legatee or to thing given, and this is true whether we regard the second article of the will by itself or in conjunction with the entire instrument. The marquise ring answers exactly to the description in the will, and the other ring, manifestly, does not. Cf. *Griscom v. Evens,* 40 *N. J. L.* 402 (*Sup. Ct.* 1878); affirmed, 42 *N. J. L.* 579 (*E. & A.* 1880); *Van Nostrand v. Board of Domestic Missions of Reformed Church in America,* 59 *N. J. Eq.* 19 (*Ch.* 1899); *Commercial Trust Co. v. Heintz,* 99 *N. J. Eq.* 411 (*E. & A.* 1925). To show that the testatrix did not intend to do that

which the will plainly states, namely, give her "large diamond solitaire ring" to her son would be to show an intention in conflict with the writing itself; and this may not be done. The word "large," as here used, is a word of distinguishment; it requires another article of similar substance with that to which it is appended to conform to the ordinary use of language. (*Cf. Van Nostrand v. Board of Domestic Missions of Reformed Church, supra,* 59 *N. J. Eq.,* at *p.* 21.) If a testator were devising the only house he owned, even if it were a big house, he would scarcely refer to it as "my large house," or, if he were bequeathing a piano, his only piano, he would hardly describe it as "my large piano," even if it were large. If we accept appellants' suggestion that the marquise ring was not regarded by the decedent as a solitaire, and the wholly unsupported contention that the other was so regarded, we are left with a reference to "my large diamond solitaire ring," meaning a ring with a stone not so big as to be notable for its size and that needs no identifying adjective because there is no other ring described as a diamond solitaire ring from which it is to be distinguished. Granted the possibility that by a mental quirk a person might resort to such nomenclature, that contingency has not the weight to overcome the plain use of words in a bequest that has no ambiguity.

The question which was asked and overruled was:

"Q. How did your mother refer to that (the marquise) ring?"

We fail to perceive how any responsive answer to the question would have served appellants' purpose. If the answer had been that Mrs. Orcutt referred to the ring as "my large diamond solitaire ring," the answer would have disproved the appellants' contention. If the answer had been, as from the discussion we assume was expected, that the testatrix had referred to the ring as her marquise ring, that would have proved nothing as the ring, in addition to being, because of its setting, a solitaire, was also, because of its shape, a marquise. Appellants were permitted to prove, and did prove, that the testatrix, in her application for jewelry insurance,

itemized, *inter alia,* "one marquise diamond ring 4.55 carats valued at 5,500.00," which we assume was that ring, and that she wrote to her insurance agent asking him to cancel insurance on numerous items of jewelry, including "diamond marquise ring, 5K. $3,000.00," which, also, we assume was that ring. But it does not appear that any item designated a "diamond solitaire ring," either large or small, was contained in the application for insurance, and it specifically appears that there was not such an item in the nineteen articles of jewelry enumerated in the letter requesting cancellation. It is, therefore, in proof that the ring over which the contest is waged was referred to by the testatrix as a marquise; and that fact was presumably the objective toward which the overruled question was directed. But it remains true that the ring was a "diamond solitaire ring;" and there is no proof produced or offered that the smaller ring, or any other ring, was referred to by the testatrix as her "large diamond solitaire ring." We consider that the court's overruling of the question was proper, but if we assume, for the purpose of the argument, that the ruling was in error, we think that the appellants were not thereby harmed.

The rule in this State is that where a testamentary provision is without ambiguity as to either the beneficiary or the thing given, and there are a person and a thing aptly responsive to the description and the provision is in complete harmony with the remaining parts of the will, extrinsic testimony may not be received for the purpose of showing what the testator intended to have written. *Griscom v. Evens, supra.* The will presents no ambiguity.

Appellants' argument on the appeal is, first, that in a suit for a construction of a will a prior revoked will is admissible as an extrinsic circumstance to show what the testator meant by what he said in the probated will. This point, with its subdivisions, and appellants' other points must be evaluated, not for their correctness as general statements of law, but in their pertinency to the case. We have held that, in view of what the proofs otherwise show, as well as of what

they do not show, the disputed paper would, if admitted, have thrown no light upon the issue. It is unnecessary for us to consider what modification, if any, of our general rule would have been invoked by other circumstances.

Appellants' second point is that Mrs. Orcutt's habitual usage of words, such as "my large diamond solitaire ring," is admissible along with other extrinsic evidence. Here, too, the argument must be weighed in terms of its application to the facts of the case and what the appendix discloses. No question was asked which was designed to elicit the decedent's use of the expression "my large diamond solitaire ring."

The same observation applies to appellants' third point, which is that "Since the phrase 'my large diamond solitaire ring' is applicable in part to two objects, the testatrix' direct statements of intention are admissible." Further, the wording of the bequest does not, we find, apply to two objects.

Appellants' fourth and last point is predicated upon a reversal and, therefore, need not be considered.

Each of the cases cited by appellants in support of those points has elements which place it outside of either the facts or the issue of the instant case. We have no occasion to review them other than to note that *Fidelity-Philadelphia Trust Co. v. Jameson,* 137 *N. J. Eq.* 385 (*Ch.* 1946), a decision upon which appellants heavily rely, involved the effort to determine what intention was in the mind of the testatrix, unlearned in the law, when, in her holograph will, she uncertainly used the expression "children of issue," a direction which, as used, did not carry the identity of the beneficiaries to the mind of the court.

Appellants seek, in their reply brief, to present new matter, namely, that rings which were in the ownership of decedent at her death are presumed, because of that fact, to have been in her ownership when she made the earlier will. That contention would better have been in the original brief so that respondent would have had opportunity for reply. Nevertheless we dispose of it on the merits. The inventory lists a ring "set with heart-shaped diamond weighing approximately

1.25 carat and numerous small diamonds," without description of the setting, and another ring "set with *three* diamonds weighing a total of approximately .75 carat and eight minute green stones" (italics inserted). It is argued that these rings and the 1.50 carat solitaire be presumed to have been in existence and in Mrs. Orcutt's ownership in 1940—this for the purpose of making up a collection of rings among which the 1.50 carat ring would be the decedent's "large diamond solitaire ring" and so affording what is said to be a reason for the use of the adjective "large." Even on that assumption there would have been but the one solitaire diamond ring.

It is true that, within limitations, the existence of a fact at one time will sustain an inference that the existence continued to a later time, and that, within narrower limitations, the inference may be carried back to an earlier time; depending upon various incidents one of which is the tendency of the fact toward change, and another is the discretion of the finder of facts. In *Alcott v. Public Service Corporation,* 78 *N. J. L.* 482 (*E. & A.* 1909), the court reviewed the question at some length and held that evidence of an observation made two or three days after an accident was admissible as corroboration of other evidence concerning conditions at the time of the accident. But the court cited with approval a textbook injunction that "The natural limitation of this sort of evidence is that the prior or subsequent time must be so near that nothing may be supposed to have occurred to cause a change; and the distance of time will depend entirely on the thing whose existence is in question." In *Wichern v. United States Express Co.,* 83 *N. J. L.* 241 (*Sup. Ct.* 1912), it was held that the value of baggage when checked at Haines Falls, N. Y., was pertinent proof of the value thereof when the check was given in due course to a delivery company at the destination, Bayonne, N. J. In *Wallraff v. W. J. B. Motor Truck Co.,* 98 *N. J. L.* 67 (*Sup. Ct.* 1922), plaintiff bought, on January 20, 1921, a truck in complete running order and in the possession of the defendant which refused to deliver; plaintiff sued in replevin and recovered judgment on Feb-

ruary 28, 1921; defendant appealed and ultimately lost but thus caused delay of a year, meanwhile holding the truck which, after a year, it offered to deliver, looted and almost wrecked; plaintiff refused to accept delivery and sued for damages; *held,* the condition proved as of January 20, 1921, was competent evidence as to the value about a month later, February 28, 1921, when the replevin suit was determined. In *Millman v. United States Mortgage & Title Guaranty Co., 121 N. J. L.* 28 (*Sup. Ct.* 1938), the action sounded in tort arising out of alleged negligence in the maintenance of a stairway; expert witnesses were called, not to establish a negligent state of repair, but to testify as to general trade standards in the construction of apartment house staircases and the conformance *vel non* of that particular stairway to the accepted standard; their conclusions were based in part upon an inspection made of the premises two and one-half years after the accident sued upon; there had been no structural change in the meantime and there was proof that the tread at which the accident happened was the same; *held,* no error in the admission of the testimony. In *Rein v. Travelers Insurance Company,* 124 *N. J. L.* 554 (*E. & A.* 1940), an earlier suit had been brought February 17, 1937, on an insurance policy for monthly disability benefits; the policy required due proof of disability which was produced, and judgment thereon obtained; and this suit was begun February 16, 1939, for disability payments thereafter accruing; *held,* the record in the earlier suit was admissible to show that due proof had been submitted; further *held,* that the burden was upon the company to show absence of the disability during the subsequent two-year period.

The foregoing citations reflect the tenor of our decisions, and they do not, in our opinion, give support to the application of the theory to the facts of the present case. The whole subject matter is so dependent upon the facts of the individual case that no rule may be said to have been established. Wigmore makes this comment: "It is often said that when a person, or object, or relation, or state of things, is

shown to have existed at a given time, its continuance is presumed. In reality, however, a genuine rule of presumption is seldom found; the rulings usually declare merely that certain facts are admissible, or that they are sufficient evidence for the jury's finding, on such issues as ownership, possession, authority, insanity, residence, and sundry others." *Wigmore on Evidence, Third Edition,* § 2530. And again: "So far, then, as the interval of time is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control." (*Id.,* § 437.) With the case in its present status appellants' argument implies one of two courses, either we hold that the court below should, as a matter of law, have given effect to the presumption or we, on appeal, give effect to it. There is no support whatever for the first of these alternatives. As to the second, we think that for us to assume from ownership in 1947 that these rings were in existence and in the same ownership seven years earlier would, under all of the circumstances, be to indulge in pure speculation for the purpose of establishing an apparent ambiguity, where none really exists, in the second article of Mrs. Orcutt's will. We therefore decline to draw the suggested inference.

We find no reversible error in the rulings under review. Upon the evidence, admitted or offered, "Article Second" of the will may not be construed to refer to other than the platinum ring set with marquise diamond weighing approximately 4.5 carats, which was the decedent's "large diamond solitaire ring."

The judgment below will be affirmed, with costs to the plaintiff.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—Justice WACHENFELD—1.