58 N.J. Super. 375 (1959)
156 A.2d 267
CHARLES RODGERS, JR., PLAINTIFF-RESPONDENT,
v.
REID OLDSMOBILE, INC., DEFENDANT-APPELLANT.
CAROLYN DE VUYST, PLAINTIFF-RESPONDENT,
v.
REID OLDSMOBILE, INC., DEFENDANT-APPELLANT.
D. McCULLAGH MAYER, PLAINTIFF-RESPONDENT,
v.
REID OLDSMOBILE, INC., DEFENDANT-APPELLANT. [Essex County District Court Nos. 295579, 296955 296252]
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1959.
Decided December 7, 1959.
*378 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Samuel A. Gennet argued the cause for defendant-appellant (Mr. Seymour Margulies, attorney).
Mr. Herbert C. Klein argued the cause for plaintiff-respondents (Messrs. Budd, Larner and Kent, Mr. William O. Barnes, Jr., Mr. Harold D. Feuerstein, Mr. Marvin A. Sachs, attorneys).
*379 The opinion of the court was delivered by CONFORD, J.A.D.
These are actions, consolidated for trial, by the owners of three motor vehicles, to recover for their total loss by fire while in the custody of the defendant for the purpose of being serviced. Judgments were entered for each of the plaintiffs on the verdict of a jury. The trial judge reserved decision on defendant's motion for dismissal after all the proofs were in, R.R. 4:51-2(a); and, after the verdict, he denied both defendant's motion for judgment notwithstanding the verdict and an alternative motion for a new trial. The actions are predicated on defendant's asserted negligence as a bailee in safekeeping the vehicles.
Defendant raises questions pertaining to the sufficiency of the proofs to establish an issue for the jury and to the competency and materiality of some of the plaintiffs' proofs, and concerning the establishment of damages.
Defendant operated a new-car automobile agency in Rutherford, with attendant facilities for servicing of cars. The establishment had been opened by defendant in December 1956 in a building previously used for the same kind of business and had been operated until a fire totally destroyed the structure and its contents on the night of December 26, 1956. Plaintiffs' cars were there at the time. The premises consisted of a single building, including showroom, servicing facilities and offices, with a parking area in the rear. Aside from the sales and office force, the employees included a service manager, Tripon, two mechanics, Flohn and Litschuer, a greaseman, and a porter. James C. Reid was president and general manager of the defendant corporation. Tripon had been out, ill, since December 1, 1956. Flohn was acting service manager on the day of the fire and did no repair work that day.
The first external indication of the fire was a sudden loud explosion heard by a neighbor about 11:40 P.M. and the eruption minutes thereafter of flames from the center of the roof which soon enveloped the whole building. The last *380 person present was a salesman, Cacioppo, who left the premises about 10:30 P.M. by way of the service area after turning out lights and locking the doors.
Before considering the proofs bearing upon negligence the law on the liability of bailees in such a situation may be briefly reviewed. In the case of a bailment for mutual benefit, as here, the bailee is liable to the bailor for failure to exercise reasonable care for the safekeeping of the subject of the bailment which results in its loss or damage thereto. Kittay v. Cordasco, 103 N.J.L. 156 (E. & A. 1926). Upon the showing by the plaintiff of the bailment and of the damage to the goods while in the possession of the bailee there arises a procedural presumption of negligence requiring the defendant to come forward with evidence to show that the loss or damage occurred by reason of a cause other than its negligence, or, if it cannot do that, that it exercised due care. However, the burden of proof on the issues of negligence and proximate cause are borne by the plaintiff throughout. Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co., 1 N.J. 239, 242 (1949); Hopper's, Inc. v. Red Bank Airport, Inc., 15 N.J. Super. 349, 352 (App. Div. 1951); Clark v. National Movers Co., Inc., 53 N.J. Super. 325, 330 (App. Div. 1959).
In the present case plaintiffs established the bailment and offered proof as to their damages on their direct case; defendant came forward with proofs purporting to show it exercised due care in maintaining the premises and in conducting its business in respect to the hazard of fire; and plaintiffs then offered affirmative proofs to show negligence. Defendant contends, however, that when all the proofs were in there was still lacking proof in relation to negligence and to a causal relationship between any asserted negligent conduct and the outbreak of fire, sufficient in weight to permit the requisite findings in those respects in terms of probability as distinguished from conjecture. It argues that since the initial presumption of negligence arising upon the proof of bailment and loss is only procedural *381 and therefore loses its probative effect once the defendant has come forward with proof sufficient to enable the jury to find against the hypothesis of negligence and proximate cause, the plaintiff is then remitted to the same burden of persuasion on these issues which the law imposes upon the plaintiff in any ordinary negligence action, citing Silver Lining, Inc. v. Shein, 37 N.J. Super. 206 (App. Div. 1955); In re Blake's Will, 21 N.J. 50 (1956); In re Weeks' Estate, 29 N.J. Super. 533 (App. Div. 1954), among other authorities. We agree with the proposition stated. Particularly to be noted is the consideration that the presumption here involved is not one based upon the natural probative relationship in reason between the facts postulated and the hypothesis presumed, in which case it would not lose its probative value by mere reason of defendant's adequately discharging its obligation to come forward with evidence of due care. See 9 Wigmore on Evidence (3d ed. 1940), § 2491, p. 288; Meltzer v. Division of Tax Appeals, 134 N.J.L. 510, 512 (Sup. Ct. 1946); Swain v. Neeld, 28 N.J. 60, 66-67 (1958); Silver Lining, Inc. v. Shein, supra (37 N.J. Super. at pages 217-218). Specifically, the eruption of fire does not itself bespeak negligence, Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467, 472 (App. Div. 1952). The bailment presumption mentioned above is based primarily upon the policy consideration that the possessor of the goods at the time of damage is in a better position to explain the circumstances. See Hopper's, Inc. v. Red Bank Airport, Inc., supra (15 N.J. Super. at page 353).
We consequently turn to the evidence and appraise it against the criterion of its sufficiency to justify reasonable differences of opinion between fair-minded men as to whether it shows that the fire and loss were the probable results of negligence attributable to defendant. If so, the issues were properly left to the jury at the trial.
Defendant offered generalized proof of good "housekeeping" of the premises and that the general and usual practices *382 in the trade were followed in the operation of the service department.
At the trial plaintiffs put much emphasis on the use by defendant's mechanics of several five-gallon buckets of gasoline for purposes of cleaning automobile parts being repaired or serviced. The two mechanics testified the gasoline was mixed in 50-50 proportions with a non-flammable solvent. However, Tripon, the service manager, told Lieutenant Knyff, of the Rutherford Police Department, who was referred to Tripon by Reid in connection with his investigation of the fire, that the buckets each contained two or two and a half gallons of gasoline. Tripon did not mention to Knyff that there was solvent in the gasoline. He was not called to testify in the case. The mechanics testified that it was their practice to put covers on the buckets at the close of the work-day; that only Litschuer was using a bucket on December 26, 1956 and that it was covered when he finished work that day about 5:30 P.M. It was admitted there may have been grease on the bucket exteriors. Flohn said the gasoline buckets were checked regularly because "there is always a chance something might happen."
Particular significance is attributed by plaintiffs to section 3 of Article VII of the local fire-prevention code which prohibits the use of flammable liquids with a flash point below 100° F. in any garage for washing parts or removing grease or dirt unless in a "special closed machine use for the purpose." Another section of the code lists gasoline among liquids having a flash point below 25° F. What the flash point of a 50-50 mixture of gasoline with the solvent assertedly used here would be is not revealed by the evidence. Nor was there any indication of how much gasoline vapor may be exuded from open cans containing gasoline during a working day or as to the flammability thereof. Sections 15 and 16 of Article II of the code, while permitting the use of "safety-cans" of Class I liquids (which includes gasoline) in buildings, require approval by the Bureau of Fire Prevention of the place of handling and use thereof if the cans *383 are of a capacity of in excess of one gallon. There was evidence tending to indicate that no such municipal permission was given defendant to use the open buckets referred to. Nor are the buckets contended to constitute "special closed machine[s]" within the meaning of section 3 of Article VII.
Defendant's mechanics customarily threw discarded parts into an open steel drum. These are frequently greasy and oily. On the day of the fire this drum was three-quarters full and some grease and oil had gathered on the bottom of it.
In April 1956 an inspection team from the local fire prevention bureau found fire extinguishers on the premises not properly recharged, an uncovered fuse panel, and "open electrical boxes." A follow-up official inspection report of May 1956 shows that the "electrical boxes" were still not covered, nor the fire extinguishers recharged. No later inspection was made, nor was any clear evidence adduced by either side as to whether these conditions were ever corrected. Flohn said, on cross-examination, that the "fuses" were "covered" but not the switch boxes, but he did not indicate as of when. It is the rule that, within limitations, the existence of a fact at one time will sustain an inference that it continued to a later time. The force of the inference is subject to the tendency of the fact toward change, and its value is largely within the discretion of the finder of the facts, under control of the court. Orcutt v. Hoyt, 6 N.J. 46, 55 (1950); Brinson v. Hernandez, 24 N.J. 391, 393 (1957). The length of the time interval cannot be stated in fixed terms. The nature of the particular conditions and circumstances control. Orcutt, supra (6 N.J. at page 57). We think the jury was here properly permitted to determine the likelihood of continuance of the open condition of the electrical boxes as of December 26, 1956.
There were two 55-gallon drums of anti-freeze liquid on the premises, but only one was in use the day of the fire and that was kept air-tight by a valve.
At about 9:30 P.M. three of the salesmen brought into the service garage some 10 or 12 cars from outside because *384 it was getting cold, filling the remaining space to capacity. Plaintiffs argue that it is inferable that these cold cars "emitted fumes" when driven into the garage and that the switches in some of them may have been left on.
They further contend that there was no proof of adequate or proper ventilation, or as to the type of construction of the building, or that there were any fire prevention or detection measures other than the defectively maintained extinguishers. Cf. Clark v. National Movers Co., Inc., supra.
Some of the factors plaintiffs stress are clearly conjectural or remote in relation to the likelihood of causal connection with the outbreak of the fire or with the possibility of controlling it were it detected sooner than it was (assuming any alarm system could have accomplished the latter). Others may have greater weight. For example, a spark from an open or uncovered fuse or electrical box might very well have ignited one of the flammable substances or vapors, if any, in the building. Our appraisal of the proofs in their entirety leads us to the conclusion, in a concededly borderline case, that the jury could have reasonably found for the plaintiffs as to both negligence and proximate cause. Compare Menth v. Breeze Corporation, Inc., 4 N.J. 428, 443, 444 (1950). It must be remembered that when a number of circumstances are relied upon to establish negligence, although no one of them alone may have the requisite probative weight for submission to the fact-finder, nevertheless the cumulative effect of the combination of them may do so. Rourke v. Hershock, 3 N.J. 422, 425, 426 (1950); Harpell v. Public Service Coordinated Transport, 35 N.J. Super. 354, 361 (App. Div. 1955), affirmed 20 N.J. 309 (1956).
Defendant takes exception to the court's admission in evidence of Tripon's declarations to the police officer. We think the latter's authority extended to the giving of the information under the circumstances. See Cafone v. Spiniello Construction Co., 42 N.J. Super. 590, 604 (App. Div. 1956). It is also argued that the evidence *385 of the reports of ordinance violations and as to the contents and authenticity of the code itself was incompetent. We find no prejudicial error in either respect.
A point is made that violation of the local fire code is not evidence of negligence. Where the provisions of the ordinance are germane to the type of hazard involved in the defendant's asserted duty a violation thereof has the same evidential force in permitting an inference of negligence as in the case of a statute. Moore's Trucking Co. v. Gulf Tire & Supply Co., supra (18 N.J. Super. at page 472); Kolankiewiz v. Burke, 91 N.J.L. 567, 571 (E. & A. 1918). We regard property as well as life and limb as fairly within the contemplated scope of the duty in relation to the ordinance here implicated. Defendant contends, but cites no authority, to the contrary. Cf. New Jersey Fidelity & Plate Glass Ins. Co. v. Lehigh Valley R. Co., 92 N.J.L. 467 (E. & A. 1918); Moore's Trucking Co., supra (18 N.J. Super. at pages 472, 473). Moreover, it did not raise this question below.
Finally, it is urged that plaintiffs should not have been permitted to testify concerning the value of their automobiles before the fire, not being qualified as experts. But an owner of personal property, at least where "of a common class or in general daily use," may be permitted, in the discretion of the trial court, to testify to its value. Nixon v. Lawhon, 32 N.J. Super. 351 (App. Div. 1954). The verdict of the jury in this case seems to have been a fair appraisal of the plaintiffs' respective losses. We perceive no error in this respect.
Affirmed.