MADELINE CARRINO, PLAINTIFF-APPELLANT, v. JEFFREY NOVOTNY, CARL MELLONE & SON, INC., ROBERT DE SIMONE, CHOO CHOO CLUB, AND JOHN DOE, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS, AND C. J. MELLONE & SON, INC., DEFENDANT-RESPONDENT.

Argued December 12, 1977—Decided January 8, 1979.

356

*Mr. Theodore E. Maloof* argued the cause for appellant (*Mr. S. Theodore Takvorian,* attorney).

*Mr. Michael J. Mastrangelo* argued the cause for respondent (*Messrs. Mastrangelo & Sattely,* attorneys).

The opinion of the court was delivered by

HUGHES, C. J. Plaintiff-appellant, Madeline Carrino (hereafter plaintiff), suffered grievous personal injuries in an automobile collision between a car in which she was a passenger and a commercial van illegally parked on a public street in Lodi, New Jersey. At trial a jury verdict awarded her damages of $185,000 against both her host, Jeffrey Novotny, and the owner of the commercial vehicle, a corpora-

tion variously referred to in some of the pleadings and briefs as Carl Mellone & Son, Inc., C. J. Mellone & Son, Inc. and C. J. Mellone, Inc. (all hereafter "Mellone"). Despite any misnomer, there is no question as to the identity of the corporation as the owner of the vehicle and that it was parked by that corporation by its servant-agent. Judgment was duly entered in accordance with the jury's verdict.

Motions by Mellone for judgment n.o.v. under *R.* 4:40–2 and for new trial under *R.* 4:49–1 were duly made, and were considered and denied by the trial judge as memorialized in his formal order:

> This matter being opened to the Court * * * on the application of defendant Carl Mellone & Son, Inc., for Judgment N.O.V. [*sic*] pursuant to R. 4:40–2 or in the alternative, for an Order setting aside the jury verdict * * * in the sum of $185,000.00, and ordering a new trial as to all issues pursuant to R. 4:49–1, and the Court having reviewed the testimony at trial, the moving papers, and having heard arguments of counsel, and for good cause shown;
>
> IT IS * * * ORDERED that the motions of defendant Carl Mellone & Son, Inc., for Judgment N.O.V. [*sic*] or in the alternative for an Order setting aside the jury verdict and ordering a new trial as to all issues be and the same [are] hereby denied * * *.

The Appellate Division reversed the judgment entered against Mellone on the basis of a brief unpublished *per curiam* opinion. Because of the importance of its content and scope to the issues we now confront, it is herein reproduced in full:

> Plaintiff suffered an accidental personal injury while a passenger in a motor vehicle owned and operated by defendant Novotny at 3:03 a.m. on February 21, 1972. Road conditions were icy, and Novotny's car skidded into a truck owned by defendant C. J. Mellone & Son, Inc. which was parked at the curb.
>
> Following a jury trial, judgment was entered against defendants Mellone and Novotny. This appeal is taken from the judgment against Mellone on the ground that it was entered without proof of negligence. Plaintiff's cause of action against defendant Choo Choo Club was based upon that defendant's alleged negligence in serving intoxicating beverages to Novotny when he was already visibly under the influence. See *Rappaport v. Nichols,* 31 *N. J.* 188

(1959). This contention was dismissed by the court on the opening, a ruling which is also appealed only by Mellone.

The plaintiff relied chiefly for her cause of action against Mellone upon a conceded violation of a local ordinance prohibiting street parking by a truck anywhere in the municipality between the hours of 9:00 p.m. and 6:00 a.m. Before us for review is the decision of the trial judge to consider this as evidence of negligence.

It is settled that where a statute or ordinance establishes a certain standard of conduct, one of the class for whose benefit it was enacted obtains the benefit thereof in an action for negligence if the breach of the enactment was the efficient cause of the injury of which he complains. *Fortugno Realty Co. v. Schiavone-Bonomo Corp.*, 39 N. J. 382, 391–393 (1963) ; *Carlo v. The Okonite-Callender Cable Co.*, 3 N. J. 253, 264 (1949) ; *Moore's Trucking Co. v. Gulf Tire & Supply Co.*, 18 N. J. Super. 467, 472 (App. Div. 1952). But the provisions of the ordinance must be "germane to the type of hazard involved in the defendant's asserted duty." *Rodgers v. Reid Oldsmobile, Inc.*, 58 N. J. Super. 375, 385 (App. Div. 1959) ; 2 *Restatement of Torts*, 2d, §§ 286, 288 (1965). The test to be applied therefrom is whether the parking prohibition of the ordinance is addressed to the purpose of traffic safety and therefore germane to any claimed duty owing from the defendant Mellone to the plaintiff.

Whatever may have been the reasons for the ordinance we are satisfied that traffic safety was not one of them. It is applicable throughout the municipality only between the hours of 9:00 p.m. and 6:00 a.m. when traffic is normally lightest. The fact that it applies only to "trucks" does not necessarily imply an intent to safeguard against obstructing the roadway since it makes no attempt to define such a vehicle in terms of a width which would occupy a greater part of the street than a passenger vehicle. Moreover, the element of causation is completely lacking from the circumstances of the accident. It is clear that the collision would have been the same even if the parked vehicle were a passenger car.

We have not overlooked plaintiff's contention that an inference of negligence in its manner of parking was allowable from the posture of the truck with respect to the sidewalk after the accident. We conclude, however, that this evidence was insufficient to support the tendered hypothesis.

Finding no basis in the record for a finding of liability against defendant Mellone the judgment is reversed. In view of this disposition it is unnecessary to deal with this defendant's remaining contentions.

■ Upon petition of the plaintiff, we granted certification, 73 N. J. 55 (1977), to examine the validity of the Appellate Division reversal of her judgment against Mellone and,

necessarily, the trial court's decision not to disrupt it.[1] That reversal was based upon what was deemed to be an insufficiency of evidence to justify the jury's verdict against Mellone. The assessment of the propriety of such reversal obliges us, as it did the trial judge and indeed the Appellate Division in the fulfillment of their respective responsibilities, to canvass the record, not as a *pro forma* exercise and certainly not to substitute the reviewer's judgment for that of the jury. Rather, this "conscientious effort and diligent scrutiny" has one object—"to correct clear error or mistake by the jury." *Dolson v. Anastasia,* 55 *N. J.* 2, 6 (1969) ; *see State v. Johnson,* 42 *N. J.* 146 (1964). As we have recently held in another context, a jury verdict, from the weight of evidence standpoint, is impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice. *Baxter v. Fairmont Food Co.,* 74 *N. J.* 588 (1977).

These limitations on the scope of appellate review are recognized in *R.* 2:10 of the Rules Governing Appellate Practice, of which section 1 reads:

2:10–1  Motion for New Trial as Prerequisite for Jury Verdict Review ; Standard of Review

In both civil and criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court. The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.[2]

---

[1] As noted *infra,* we shall also dispose of other issues left unresolved by the Appellate Division disposition. We do so "in the interests of a fair resolution of the entire controversy projected below." *State Farm v. Zurich American Ins. Co.,* 62 *N. J.* 155, 165 (1973).

[2] The evolution of this rule is discussed in an informative comment appearing in *Pressler, Current New Jersey Court Rules,* Comment to *R.* 2:10–1 at 301–02:

2. The second sentence of this rule as adopted as part of the 1969 revision, substituted for the source-rule standard of jury mistake, partiality, prejudice or passion, the standard of "manifest

The decisional norm guiding the trial judge on a new trial motion is essentially the same:

\* \* \* The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law. [*R.* 4:49-1(a)].

Therefore, as we noted in *Baxter,* the functional limitations upon both trial and appellate courts are similar in nature except as concerns the "feel of the case" element possessed by the trial judge but absent in the cold appellate record, a factor which has its own limitations as noted by Justice Hall in *Dolson v. Anastasia, supra,* 55 *N. J.* at 7. In the present case, of course, that factor, for what it is worth, weighs on the side of the trial judge's refusal to disrupt a jury verdict rendered in a trial over which he presided. Aside from that point, however, our principal task here is to scrutinize the trial record to determine whether or not it supports the Appellate Division's conclusion.

denial of justice under the law". The standard for appellate review of the trial court's disposition of a new trial motion based on weight of the evidence was again revised, as a matter of form rather than substance, by amendment effective September, 1971 to conform with the language suggested by Dolson v. Anastasia, 55 N. J. 2, 6-8 (1969). And see Panas, et als. v. N. J. Natural Gas Co., 59 N. J. 255, 261 (1971). The standard is now phrased as "a miscarriage of justice under the law". The Court in Dolson v. Anastasia addressed itself to an analysis of the nature of the appellate court's review of the trial court's disposition of the motion for a new trial, making clear that the standard of the appellate court's review is essentially the same as the standard controlling the trial judge's disposition. The standard of appellate review is not limited to a determination of whether or not the trial court committed an abuse of discretion but rather the appellate court must make its own determination as to whether or not there was a miscarriage of justice, deferring to the trial judge only with respect to those intangible aspects of the case not transmitted by the written record — described by the Court as such conditions as witness credibility and demeanor and the "feel of the case".

362

■ That record contains evidence showing that this collision occurred at nighttime on Passaic Avenue in Lodi; that defendant Novotny was operating his car north on Passaic Avenue with plaintiff Carrino a passenger in the right front seat; that the large commercial van owned by Mellone was illegally parked facing north on the east side of Passaic Avenue about 90 feet from the Terrace Avenue intersection; and that the van was used in Mellone's food business and had been parked in that location by its employee.

At the point where the accident occurred, Passaic Avenue is a narrow, 30 foot wide roadway with one lane of travel in each direction. Along the eastern curb, which is approximately 3 inches high, there was a 3 to 4 inch snow embankment near or on which the van was parked. Testimony and photographs also could have indicated to the jury that the van was parked at an angle to the curb. The west curb-side of this narrow street was entirely occupied by parked passenger vehicles of homeowners in the vicinity (overnight passenger car parking is not prohibited in Lodi in this area), as testified to by one DeSimone whose car, partly for that reason, had been parked in front of the Mellone vehicle. The traveled lanes were comparatively dry but a mound of ice existed in the center of the street.

Considering evidence that the Mellone vehicle was 10 feet wide[3] and the Novotny car 6 or 7 feet wide, thus together taking up more than the 15 foot width of the northbound lane, it is not surprising that Novotny, in order to pass the van, was forced onto the icy center patch which threw his car into a skid and propelled it into the Mellone truck. This forcible collision raised and moved the Mellone vehicle forward in the angle at which it had been parked. Although there was no evidence of excessive speed on Novotny's part,

---

[3]We are aware of the statutory limitation on a commercial vehicle width, *N. J. S. A.* 39:3–84, and special exception permit, *N. J. S. A.* 39:3–84a, but this estimate was that of a police witness and a matter for jury consideration.

the collision was so violent as to inflict very serious injuries on his passenger.

In explaining why he had parked in front of the Mellone vehicle, DeSimone described Passaic Avenue in this way — "Well, that's a bad street there and cars come down pretty fast both ways, so I figured I'd be protected if I parked in front of the truck." This and much else of the record tells us (and no doubt told the jury) something about the tight and congested street on which this accident occurred, about the causal relationship between the accident and the illegal and otherwise allegedly negligent parking of this van, and indeed about the interest and purpose of this municipality in forbidding the parking of commercial vehicles on its streets at nighttime. It had provided by ordinance as follows:

ARTICLE 8 — PROHIBITED PARKING OF COMMERCIAL VEHICLES
Section 8–1 Prohibited Parking at Times on all Streets
No person shall park a truck, between the hours of 9:00 p.m. and 6:00 a.m. on any street in the Borough of Lodi. [Lodi Traffic Ordinance No. 985].

█ Since many trucks and commercial vehicles are so large as to constitute a substantial obstruction to traffic, and if other thoroughfares in Lodi are as tight and narrow as Passaic Avenue, we see not too much justification for the Appellate Division conclusion that "[w]hatever may have been the reasons for the ordinance we are satisfied that traffic safety was not one of them." There was no direct evidence presented on either side of the issue of municipal motivation for the ban. Considering the narrow street and the need for overnight passenger car parking for the accommodation of adjacent homeowners, we see no basis here for the conclusion, as matter of law, that the parking ban was not germane to the purpose of traffic regulation and safety. *Cf. Jackson v. Magnavox Corp.*, 116 *N. J. Super.* 1 (App. Div. 1971). Nor can we agree, as matter of law, that there

could have been no causal relationship between the hazard thus interdicted and the respondent's duty to avoid it and the collision which it precipitated.

If, as Mellone contends, the parking ban section above quoted was not "germane to the type of hazard involved in the defendant's duty" but was instead for purposes other than traffic safety, it is apparently discordant with many other provisions in the ordinance of which it was a part. In that context we notice that section 2–2 of that ordinance prohibits parking at all times on certain Lodi streets; sections 2–4 and 9–1 prohibit parking during certain hours or days on certain streets; section 4–1 excludes trucks over five tons from certain streets; section 5–1 designates certain streets as one-way; section 6–1 and 6–2 designate through streets and stop sign installation at various intersections; section 7–1 prohibits certain turns at designated intersections; section 10–1 provides for emergency parking prohibitions. Manifestly, the primary considerations underlying these sections are traffic safety and traffic flow, even though collateral purposes aesthetic in nature, or for the inhibition of vandalism or the like, may have been in mind.

Nor can we accept on this record the bald assertion that "the collision would have been the same even if the parked vehicle were a passenger car." It was certainly open to the jury to decide that if such a hypothetical passenger car were only 6 or 7 feet in width like Novotny's car, it would have been at least possible that Novotny could have passed it comfortably without encountering as he did, or in the way he did, the dangerous icy patch in the middle of the street which caused his skid and precipitated the collision.

We believe that on the whole of the evidence, including the fact of illegal parking, the jury could reasonably have concluded that defendant Mellone was negligent in the way that its employee-driver chose to park the van near the traffic light at the Terrace Avenue intersection and near ice formations in the center of the road; that such driver, a

resident of the area (who himself did not testify at the trial), knew or should have known that northbound drivers approaching a red light would have to move around the van and encounter ice while applying their brakes, thereby encouraging a dangerous skid; that to that extent and in that sense the van obstructed the traveled portion of the northbound lane; and that the van was negligently parked at an angle to the curb thereby further impeding the flow of traffic.

Thus the question of whether a reasonably prudent man could foresee the risk of harm to others (*Ettin v. Ava Truck Leasing, Inc.,* 53 *N. J.* 463, 483 (1969)) was directly implicated, and surely came within the legitimate range of jury decision. For the "test of negligence * * * is whether a reasonably prudent man at the time and under the circumstances should foresee an unreasonable risk or likelihood of harm or danger to someone else. * * * Generally it is for a jury to say what the reasonable man would foresee, since its decision is thought most likely to accord with commonly accepted standards. The courts allow wide latitude to the jury, restricting their sphere sparingly, on an *ad hoc* basis, where one conclusion only seems warranted by the facts." *Schaublin v. Leber,* 50 *N. J. Super.* 506, 510 (App. Div. 1958) (citations omitted).

Nevertheless, the Appellate Division here concluded that the above body of evidence with all the reasonably permissible inferences flowing therefrom (considered most favorably in support of the verdict, *see Bell v. Eastern Beef Co.,* 42 *N. J.* 126, 129 (1964); *Bozza v. Vornado, Inc.,* 42 *N. J.* 355, 358–59 (1964)), was insufficient to support a finding of negligence and causal relationship between that negligence and the accident. It must necessarily have concluded also (unless tempted to substitute its judgment for that of the jury in a "thirteenth juror" role, *Dolson, supra,* 55 *N. J.* at 6) that such verdict clearly and convincingly amounted to a miscarriage of justice under the law (*R.* 2:10–1, *R.* 4:49–1, *supra*),

such as to shock the conscience of the court and convince it that to sustain the verdict would be manifestly unjust. For in our constitutional system, as we have indicated, it is only upon the predicate of a finding of miscarriage of justice of such magnitude that corrective judicial action is warranted. *See Baxter v. Fairmont Food Co., supra; Sweeney v. Pruyne,* 67 *N. J.* 314 (1975); *Taweel v. Starn's Shoprite Supermarket,* 58 *N. J.* 227 (1971); *Dolson v. Anastasia, supra; State v. Johnson, supra.*

In this connection, in viewing the totality of the evidence, we are reminded of the admonition of Judge Conford in *Rodgers v. Reid Oldsmobile, Inc.,* 58 *N. J. Super.* 375, 384 (App. Div. 1959):

It must be remembered that when a number of circumstances are relied upon to establish negligence, although no one of them alone may have the requisite probative weight for submission to the fact-finder, nevertheless the cumulative effect of the combination of them may do so.

Considered in this way and after fully canvassing the record we cannot conclude, as did the Appellate Division, that the verdict against Mellone was defective in the very substantial respects we have mentioned. In such event it must stand, lest the court intrude upon the rightful province of the jury.

As we have noted, other issues were projected before the Appellate Division not only as between plaintiff and Mellone, but as to another original party defendant in the plaintiff's suit. This party, an entity known as the Choo Choo Club, operated a bar and grill in which, it was alleged, Novotny consumed alcoholic drinks which might have affected his driving and precipitated, in part, the collision. Mellone cross-claimed against Choo Choo Club for contribution under the Joint Tortfeasors Contribution Act, *N. J. S. A.* 2A:53A-1 *et seq.; R.* 4:7-5, predicating its claim on the liability theory exemplified in cases such as *Rappaport v. Nichols,* 31 *N. J.* 188 (1959). At the outset of trial and

after opening statements by counsel for plaintiff and defendants Novotny and Mellone, the court granted a motion by the Choo Choo Club for involuntary dismissal, a decision challenged by Mellone as violative of *R.* 4:37–2,(c), which provides in part:

When a claim for contribution has been asserted pursuant to R. 4:7–5, a motion for dismissal as to any defendant against whom such claim has been asserted shall be held in abeyance until the close of all the evidence, * * *.

Especially since the testimonial record includes disputed evidence as to Novotny's consumption of alcohol, we believe the trial judge should not have dismissed the cross-claim before hearing the evidence and that such dismissal, upon remand, must be set aside.

■ Another issue raised by Mellone on its appeal concerned the trial court's allowance of an amendment of the complaint (which complaint had been timely filed) to correct the misnomer of defendant to which we have referred, permitting service of process upon the proper corporation, at a date shortly after the statute of limitations had run. Considering the circumstances before the trial court, we find no merit in this ground of appeal. *R.* 4:9–3; *see Farrell v. Votator Division of Chemetron Corp.,* 62 *N. J.* 111 (1973); *Aruta v. Keller,* 134 *N. J. Super.* 522 (App. Div. 1975). Nor is there substance, in our view, in the criticism made of certain remarks of plaintiff's counsel to the jury, particularly since they were neutralized by the trial judge's admonition to the jury to confine its consideration to the evidence in the case.

■ Finally, plaintiff Carrino appealed from the trial court's order under *R.* 4:42–11(b) awarding her prejudgment interest, not from the date of filing of the original complaint but only from the date of its amendment to include Mellone in its proper corporate name. Since we decide here that plaintiff's judgment against Mellone must be reinstated, and we are remanding for trial the issue of Mellone's cross-claim

against the Choo Choo Club, we think the matter of prejudgment interest should also be remanded and kept open for reconsideration, particularly in light of the possibility that Mellone's liability might be shared with the Choo Choo Club, including responsibility for some portion of prejudgment interest. In that respect, because of the lapse of time since the case against the Choo Choo Club was dismissed at trial, one might expect that the trial court will not be unmindful of the flexibility built into the rule "provid[ing] that in exceptional cases the court may suspend the running of such prejudgment interest." *R.* 4:42–11(b).

Despite the lack of cross petition for certification and other procedural deficiencies which might suggest otherwise .(*cf. Skulski v. Nolan,* 68 *N. J.* 179, 208 (1975)), we have chosen to dispose of all issues presented to the Appellate Division, relaxing the procedural rules in the interest of fairness. *R.* 1:1–2.

Accordingly, the decision of the Appellate Division is reversed; the judgment of plaintiff against Mellone is reinstated; the involuntary dismissal of the cross-claim of Mellone against the Choo Choo Club is overruled; the issue reflected in that cross-claim is remanded to the Law Division for trial; and the matter of division of prejudgment interest as among all parties is remanded for appropriate consideration by the trial court.

On the trial of Mellone's cross-claim against the Choo Choo Club, the parties are bound by the reinstated verdict of plaintiff Carrino against Mellone, both as to liability and damages. As to Mellone, it "can point to no prejudice infecting the verdict against [it], with respect to liability or damages, as a result of the early dismissal" of the Choo Choo Club from the case, *Mickens v. Marascio,* 58 *N. J.* 569, 574 (1971), for despite that dismissal, Mellone was in no way restrained at trial from probing Novotny's drinking and resultant conduct as relevant to the issue of causation. And as to the Choo Choo Club, by its motion at the outset for in-

voluntary dismissal, it induced error by the trial court, and should be bound by the "jury's determination that [Mellone was a] tortfeaso[r] and the amount of [its] liability." *Id.* at 575–76. In that case this Court held:

In future cases involving cross-claims among defendants, if a co-defendant wishes to move for dismissal and yet be heard fully on the amount of damages, the appropriate course would be to ask the trial court to hold his motion and dispose of it n.o.v., *R.* 4:40–2, should that become necessary. [58 *N. J.* at 576].

By analogy, had the Choo Choo Club been skeptical as to Mellone's basic liability and the scope of plaintiff Carrino's damages, and wished to be heard thereon, it could have asked the trial judge, in conformity with the rules of court, to hold its motion for dismissal "in abeyance until the close of all the evidence." *R.* 4:37–2(c).

Reversed and remanded to the Law Division for proceedings not inconsistent with this opinion.

SCHREIBER, J., concurring. The trial court charged the jury that as to the defendant Mellone

the allegation here is that he was negligent and the main allegation seems to be, or appears to be, and is the fact that if by parking that commercial vehicle there, which was a step-van, that he was in violation of the local ordinance of the Borough of Lodi. There was no question that he was, but that in itself is not negligence. You must consider that and all the other issues of the case in determining whether the driver of the Mellone vehicle was negligent in parking at that particular area and whether that had anything to do with the happening of the accident. In other words, was that a proximate cause of the happening of the accident.

No reference was made in the charge to whether the Mellone vehicle had been parked at an angle before the accident, and, if so, the extent of that angle and the extent to which the rear of the vehicle extended from the curb. In fact, the trial court upheld an objection to plaintiff's comment during summation that the Mellone vehicle was parked at an angle. The trial court stated:

There's no testimony in this that this truck was parked at an angle. I'm striking the comment. There is no testimony in this case that this truck was parked at an angle.

My review of the record satisfies me there was a dearth of evidence on each of these pertinent material facts.

Under all these circumstances a verdict of negligence cannot be sustained on the factual premise that the truck was parked at an angle so that it protruded an unreasonable distance into the street. In any event the jury's verdict was not based on the manner in which the Mellone vehicle was parked, but only on the theory that it was negligent to park the truck there contrary to the ordinance under the conditions then existent.

As the majority points out, the ordinance was evidence of a standard of care, the breach of which, when considered with other facts, was sufficient to constitute negligence and the jury so found. It is on this basis that I join in the Chief Justice's opinion. The ordinance adopted by the municipality in accordance with authority vested in it by the State, *N. J. S. A.* 39:4–197, at least in part regulated the use of the street for safety reasons. This clearly was for the benefit of traffic on the street. Compare *Yanhko v. Fane,* 70 *N. J.* 528 (1976), where an ordinance imposed on abutting owners an obligation to construct sidewalks and to maintain them in good repair, and *Lambe v. Reardon,* 69 *N. J. Super.* 57 (App. Div. 1961), with dissenting opinion of Justice Jacobs in *Moskowitz v. Herman,* 16 *N. J.* 223, 228 (1954). See also *Moore's Trucking Co. v. Gulf Tire & Supply Co.,* 18 *N. J. Super.* 467, 472 (App. Div.), certif. den. 10 *N. J.* 22 (1952).

Justice CLIFFORD joins in this opinion.

CLIFFORD and SCHREIBER, JJ., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.