**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4676-18

KELLY YAWGER,

     Plaintiff-Appellant,

v.

SUBURBAN HEATING OIL
PARTNERS, LLC, and
SUBURBAN PROPANE, LP,

     Defendants-Respondents.

_____

Argued December 9, 2020 – Decided March 2, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0622-15.

Anthony J. Macri argued the cause for appellant (Hoagland, Longo, Moran, Dunst & Doukas, LLP, and Anthony J. Macri, attorneys; Richard J. Mirra and Anthony J. Macri, of counsel and on the briefs; Jennifer L. Brozon, of counsel).

Timothy I. Duffy argued the cause for respondent (Coughlin Duffy, LLP, attorneys; Timothy I. Duffy, of

counsel and on the brief; Joseph P. Fiteni, on the brief).

PER CURIAM

Plaintiff, Kelly Yawger, appeals from an April 4, 2019, judgment of no-cause after a jury trial against defendant, Suburban Heating Oil Partners, LLC, and a June 7, 2019, order denying her motion for a new trial based on alleged juror misconduct. We affirm.

We glean the following facts from the record. On November 13, 2013, defendant delivered fuel oil to the basement tank in plaintiff's home. During delivery, the dispensing nozzle slipped out of the tank and sprayed approximately one gallon on the employee, the tank and the basement floor, leaving a noxious odor. Defendant called its remediation company and began, over the course of a few days, to clean up the spill. According to plaintiff, the oil smell was strong and permeated the house through the heating system. While remediating, defendant used "Sweet Air Powder" to help cover the smell. At trial, defendant asserted the powder it used was all-natural and environmentally friendly, but plaintiff argued the powder should not be inhaled and couched it as unsafe.

Shortly after the spill, while plaintiff was in the shower, she purportedly sneezed violently, from the oil smell and the powder, causing an annular tear

2

in her lower back. She complained of chronic obstructive pulmonary disease (COPD), sleep apnea, chronic asthmatic bronchitis, chronic pain, and other illnesses as a result of her exposure to the fumes. She filed suit against defendant, and the case was tried before a jury in April 2019.

At trial plaintiff called Dr. Dennis Stainken, a toxicologist, and Dr. Alan Furst, a family practitioner. Dr. Stainken opined based on his review of documents that because of the spill, certain toxic chemical compounds would have been in plaintiff's "breathing zone" and could have caused an acute allergic reaction such as coughing and spasm. Dr. Furst opined that due to plaintiff's initial exposure to the spill and the Sweet Air Powder, severe sneezing and coughing precipitated her back injury. Plaintiff's mother also testified, explaining her observations regarding her daughter's illnesses and medical history. She further testified to the condition of the house after the incident.

Dwayne Armstrong, defendant's service coordinator, testified about defendant's efforts to address the spill in plaintiff's basement, and in particular, the oil spill cleanup and the use of Sweet Air Powder. Defendant also presented Dr. Ilia Segal, a medical expert, and Ms. Arlene Weiss, a toxicologist.

A-4676-18

After closing arguments, on April 17, 2019, the jury began deliberations. On the second day of deliberations Juror #8 gave the judge a sealed envelope. With counsel's consent, the judge brought Juror #8 into the courtroom, where the juror expressed her concerns about a fellow juror. She reported that a fellow juror had taken notes at home and then brought them into deliberations. But she did not state the notes were examined, nor did the juror share them. After addressing the court, Juror #8 returned to the jury room.

The court and counsel discussed how to address the notes and the jury. The court had initially instructed the jury "that note taking would be distracting that notes would often be incomplete and undue weight may be given to the evidence," while focusing on the time frame of the trial, not that a juror "couldn't formulate [his or her] thoughts from -- from the trial at home." Accordingly, the trial judge decided to repeat his instruction regarding when note taking is allowed, as there may have been confusion, and this juror's conduct did not offend the purpose of the instruction.

The court fashioned an instruction to the jurors that combined the importance of relying on their recollections, while addressing the fact that notes should not supersede recollections. Although plaintiff's counsel expressed concern regarding how extensively the notes may have influenced

4

the other jurors, both parties, and the court, agreed to address the jury as a group and determine whether it would be unable to do their job impartially and without undue influence:

> THE COURT: As a group?
>
> MR. DUFFY: I would say bring them all in.
>
> MR. MACRI: Do you ask them as a group or poll them --
>
> MR. DUFFY: No, as group.
>
> MR. MACRI: -- individually?
>
> MR. DUFFY: Does anyone feel that his proc--that they're unable to comply with my direction as given?
>
> THE COURT: Well, I could do that and then if anyone raises their hand, then I'll deal with them individually.
>
> MR. DUFFY: Right.
>
> THE COURT: Is that procedure --
>
> MR. MACRI: Yes.
>
> THE COURT: Okay.

Both parties found the group procedure, with the modified instruction and polling, "agreeable."[1]  The judge then reinstructed:

---

[1] The court's instruction was an amalgamation of <u>Model Jury Charges (Civil)</u>, 1.11(D), "Note-Taking, When Note Taking is Prohibited" (rev. May 2007)

Okay. Welcome back. Have a seat. An issue has come to my attention and I don't want you to speculate as to how it came to the [c]ourt's attention because, quite frankly, it's not important, but I do want to address it.

We want you [to] rely upon your combined recollection of all the evidence. During your deliberations the notes of a juror will not be evidence. Your understanding and recollection of the evidence will be more significant than a note. Notes are memory aids and are not evidence or the official record. Jurors who took no notes should not permit their independent recollection of the evidence to be influenced solely by the fact that another juror or other jurors may have taken notes. [Their] notes may be wrong and your recollection correct.

You are to resolve the factual disputes in this case based on the exhibits which you have in the jury room and your recollection of the testimony of witnesses as bearing on those issues. Moreover, do not overemphasize the significance of a written note made by yourself or a fellow juror. If a note does help to refresh your recollection, it has been useful, but it is your recollection not the note which is important. If your memory differs, you have an absolute right to rely solely on your own recollection.

Is there anyone on the jury who doesn't feel they can follow that instruction? All right. So, I see no one raising their hand or . . . affirmatively so. I'm taking

---

(1.11(D)), and Model Jury Charges (Civil), 1.15(A), "Note-Taking by Jurors, Preliminary Instruction Before Trial" (approved Nov. 1998) (1.15(A)).

A-4676-18

> that all the jurors are able to follow that instruction. Okay. Well, thank you.
>
> So, now I'm going to send you back to the jury room which is where your deliberations are and you may resume deliberations.

A half-hour later, the jury returned their verdict and the judge individually polled the jurors, who voted eight to zero finding defendant was negligent but did not find that defendant's negligence was the proximate cause of plaintiff's claimed injuries.

Plaintiff filed a motion for a new trial, which was argued on June 7, 2019. The trial court denied the motion, providing a thoughtful and lengthy opinion on the record. The judge discussed the expert testimony and the timeline of plaintiff's symptoms. The judge concluded the record supported the jury's verdict and found no juror misconduct. Failing to find juror misconduct meant the judge did not need to pursue the additional analysis to excuse jurors and, if needed, substitute them with alternate jurors.

The judge stated: "a fair reading of the transcript clearly indicates that there was consent and acquiescence to th[e] procedure [the court utilized to address the note-taking] by both sides after discussion and modification." Supporting his decision, he noted "it's not mandatory that you poll every juror, but I was ready to deal with the jurors individually if anyone had a problem,

A-4676-18

but we didn't and I believe there was acquiescence in that." The court denied plaintiff's motion for a new trial. This appeal followed.

We will not reverse a trial court's decision to deny a motion for a new trial "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. "That inquiry requires employing a standard of review substantially similar to that used at the trial level, except that the appellate court must afford 'due deference' to the trial court's 'feel of the case,' with regard to the assessment of intangibles, such as witness credibility." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463 (1984)); see also Carrino v. Novotny, 78 N.J. 355, 360 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977); Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969). "A jury verdict should be set aside 'only in cases of clear injustice.'" Ibid. (quoting Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005)).

Plaintiff raises only one argument on appeal: "she is entitled to a new trial based upon juror misconduct and the trial court's failure to take appropriate steps to ensure a fair trial." Initially, plaintiff argues it was "incontrovertible" that defendant was negligent in spilling the oil, which the jury verdict reflected. She submits that there is no reliable basis to conclude

8

that the jury finding as to proximate cause was not free from outside influence, interference or corruption in the deliberative process. Plaintiff also asserts the court should have inquired as to the contents of the notes and whether they produced undue influence on the jury's process. We disagree.

Here, the notes were not disclosed to other jurors, and no jurors said they would not be able to follow the court's additional instructions. The judge specifically asked: "[i]s there anyone on the jury who doesn't feel they can follow that instruction? All right. So, I see no one raising their hand . . . [i]'m taking that all the jurors are able to follow that instruction."

Ultimately, the court determined the notes did not have any tendency to lead the jury to arrive at a verdict that is inconsistent with the legal proofs, and the court's charge was sufficient:

> And, again, it's, you know, whether or not [it] has the ultimate effect on the administration of justice . . . . So I'm concerned there was no indication that there was anything extraneous and just someone taking notes from the trial testimony and bringing that in and the -- I don't think that constituted misconduct. And I think the procedure we utilized dealt with that because, as I said, the recollections are free to distribute . . . their recollections of the testimony when they're in there.

9

Now, the issue is whether that written notes would be somehow [a]ffect the . . . the Panko[2] test or [a]ffect the . . . administration of justice. And . . . I think if you take a fair reading of the transcript, and I did say we got a note, but I didn't discuss -- we didn't discuss in [chambers] anything about how we handle it[.] We went on the record. Everyone wanted to do it on the record, so we did it on the record, and it was a process of what do you think, and then -- it was a procedure and we went through it. There was suggestions from both counsel. I indicated what my thoughts were and then some additional suggestions to how to handle it, and . . . that's what we did. And I think [] the indication that [was] somehow improper or . . . that it was not agreed upon is improper. I think a fair reading of the transcript clearly indicates that there was consent and acquiescence to this procedure by both sides after discussion and modification.

And if you look at what we did with the jury charge that we presented, and it's outlined in the transcripts that's submitted, and I won't belabor the transcripts, but when we read, you know, the note-taking, that they're not to give that any excess weight, you go by your own recollections, you're not bound by someone else's notes, and that you decide this case based on the testimony from the witness stand and the exhibits . . . . [T]hen we agreed that if any juror had a problem with that instruction, they would indicate it. And I also indicated that if anyone did, we would go through them individually, and no one raised an issue from the [j]ury. And as far as I'm concerned, the attorneys, and I think the record reflects, attorneys agree to that as the proper way of handling it and that's how we handled it collectively and I made that decision.

---

2  Panko v. Flintkote Co., 7 N.J. 55 (1951).

10

Plaintiff asserts the judge should have taken affirmative steps to make an objective determination of potential prejudice.

The right to trial by a jury that is fair and impartial requires each juror to be "impartial, unprejudiced and free from improper influences." Panko v. Flintkote Co., 7 N.J. 55, 61 (1951). An irregularity is grounds for reversal and a new trial if it "could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge." Ibid. "The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so." Ibid.; accord State v. Adams, 320 N.J. Super. 360, 366-69 (App. Div. 1999).

Based on our review of the record, we conclude the judge's procedure was sufficient because he simply learned someone had brought notes, not shared them, and that they contained recollections from a single juror. In essence, the only irregularity claimed by plaintiff is the disclosure of a juror that another juror had taken notes at home, and brought the notes with him to deliberations, then told the other jurors he had notes. There is no evidence in the record that he shared them.

Based on the trial judge's instructions to the jury reasserting the obligation to deliberate based upon their own recollections and the fact that no

11

juror indicated they could not follow the instructions, we discern no abuse of the court's discretion, nor do we discern that the jury was exposed to an irregular matter that could have influenced the outcome or had the capacity to do so.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4676-18